## THE STATE v. LEWIS HALE, Appellant.

**Division Two, December 19, 1911.**

1. **EVIDENCE: Homicide: Where Deceased Was Aggressor.** Where deceased was the aggressor, it is competent to admit evidence which tends to show the attitude of the parties toward each other, the animus of the deceased, and what reasonable grounds, if any, defendant had for believing his life was in danger at the time he fired the fatal shot.

2. ————: ————: **Former Difficulty.** The details of a former difficulty between defendant and deceased are not admissible in evidence. It is competent to show there was a former difficulty, and, if there were any threats at the time, to show them; but it is not competent to go into the character of a difficulty so far removed from the fatal encounter as to be a separate one.

3. **INSTRUCTION: Right to Return to Place of Abode.** An instruction telling the jury that defendant, after he had been chased by deceased, had a right to return to his place of abode, where the difficulty occurred, is. properly refused, where there is nothing in the case that will authorize the submission of such a question as a distinct issue.

4. ————: **Uncommunicated Threats.** Where uncommunicated threats were admitted in evidence without objection, an instruction telling the jury that they should be considered in determining what were deceased's intention in going to the defendant's place of abode, where the homicide occurred, should be refused, as calling particular attention to such threats. Besides, the instruction directed the jury's attention to defendant's motive in going to the house, and did not properly direct the jury's attention to the real point upon which the testimony was admissible, namely, that deceased was the aggressor. An instruction telling the jury that, in passing upon the question whether defendant had reasonable grounds to believe it was necessary to shoot to protect his life, "they should consider all the facts and circumstances in the case," was sufficient.

5. **UNCOMMUNICATED THREATS: As Showing Aggressor.** Uncommunicated threats are admissible upon the question of whether the deceased was the aggressor in the difficulty that resulted in his death, and for no other purpose.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*A. W. Lyon* and *M. C. Smith* for appellant.

(1) The court erred in permitting the witness to testify about Mrs. Zimmerman being at Sager's house at dates long prior to the date of the homicide, and of Zimmerman having been there on occasions long prior to the homicide, and as to Zimmerman sitting on lumber pile, etc. This evidence was too remote, was immaterial to the real issues, and was highly prejudicial to the defendant. (2) The court erred in excluding evidence offered by defendant showing the general character of the assault made upon defendant by deceased prior to the homicide, as the evidence would show the physical superiority of deceased over defendant, and was competent to show the enmity of deceased toward defendant. The court erred in refusing to permit defendant's council to even make his offer. The court erred in excluding testimony offered by defendant showing the date of Mrs. Zimmerman's marriage, after the homicide. The evidence would have shown she married in about two months thereafter. This was competent as controverting the impression the State constantly attempted to make on the jury that there was a love affair between Hale and Mrs. Zimmerman. (3) The court erred in refusing to give instruction 5 offered by defendant, as to uncommunicated threats made by John Zimmerman against defendant. Instruction 10 given by the court was an attempt to cover the refused instruction, but the instruction given was seriously defective in that it omitted calling the attention of the jury to threats whether communicated or not to defendant. Inasmuch as the court had instructed the jury in instruction 6 in regard to threats communicated to defendant, the jury undoubtedly would be led to believe that the threats mentioned in instruction 10 meant only such threats as were communicated to defendant and to exclude any

and all threats not communicated to defendant. The court should have instructed the jury of threats not communicated. State v. Hicks, 92 Mo. 431; State v. Nelson, 166 Mo. 191. (4) The court erred in refusing the instruction in reference to defendant's lawful right to return to his home or place of abode after having been chased by Zimmerman. This instruction is the law governing the facts in evidence. (5) Defendant after being chased by deceased returned to his home where he had a lawful right to go. In the absence of this instruction the jury were left to infer that defendant in returning to his home before the shooting and after he was chased by deceased became the aggressor. State v. Mathews, 148 Mo. 194; State v. Evans, 124 Mo. 410.

*Elliott W. Major,* Attorney-General, and *Campbell Cummings,* Assistant Attorney-General, for the State.

(1) The place, character and details of the prior fight between deceased and defendant were immaterial and irrelevant. (2) After witness had answered that deceased's widow had married since the homicide, it was not error to exclude the date of the marriage, especially as no offer of proof was made. State v. Foister, 202 Mo. 46; State v. Zorn, 202 Mo. 12; State v. Arnold, 206 Mo. 589; State v. Page, 212 Mo. 224. (3) Instructions 6 and 10, as to threats, covered both communicated and uncommunicated, and were in approved form. They covered both the question of the reasonableness of defendant's apprehensions and as showing who was the aggressor, or as the instruction puts it, the nature of the transaction. State v. Nelson, 166 Mo. 191; State v. Darling, 199 Mo. 185. Instruction 10 uses the words "any threats." The two instructions given should be read in connection with each other. State v. Sharp, 183 Mo. 715. (4) Where the instructions given for the State cover every phase

of the case, it is not error to refuse all instructions asked by the defendant. State v. Darling, 202 Mo. 150; State v. Carpenter, 216 Mo. 448. Moreover, defendant's refused instructions were argumentative and theoretical, not a clear and plain declaration of law on self-defense, and the law of self-defense had been covered by the court's instructions. State v. Edwards, 203 Mo. 528.

FERRISS, J.—On August 4, 1909, the prosecuting attorney of Greene county filed an information in the circuit court of said county charging the defendant with the crime of murder in the first degree. After a mistrial under said information, the State elected to prosecute for murder in the second degree. The second trial resulted in defendant's conviction of murder in the second degree, the jury assessing his punishment at sixteen years in the penitentiary, which punishment was by the court reduced to ten years in the penitentiary, and sentence pronounced accordingly.

The homicide occurred at the home of one Robert Sager, in the city of Springfield, Missouri, on the evening of July 17, 1909. Sager and the deceased, John Zimmerman, were brothers-in-law, their wives being sisters. In addition to the defendant, who boarded with Sager, there were in the house at the time of the homicide Mrs. Sager, Mrs. Zimmerman and Mrs. McDowell, sisters, and Mrs. Kesterson, their mother. A few minutes before the homicide the deceased passed by the house of A. L. Downing, who lived next door to Sager, and in response to Downing's greeting deceased said he was "wild and woolly that night," and passed into Sager's house. Shortly thereafter witness Downing saw defendant and the deceased circling around the house, the deceased apparently wanting to talk with the defendant. He then saw the deceased and two of the women enter the house at the back

door, defendant following them. After defendant had entered the house, Downing heard some rough language, and heard some one say "he calculated to kill the son-of-a-bitch before night." Soon afterwards the witness heard a pistol shot, and saw the deceased standing on the porch in front of Sager's house, facing Sager and his wife, who were in the doorway. The witness did not see anything in the hands of the deceased. Immediately after the shooting, Mrs. Kesterson came out of the house and requested Downing to come over, saying that Zimmerman had shot himself; that "the fool had shot himself." When Downing went over he found the deceased lying on the porch, and observed a wound in his head about two inches above the eye. The defendant told the sheriff who arrested him that he shot the deceased, and he was also heard to say while on his way to the jail that he shot to kill. Deceased died about thirty minutes after the shooting.

The State introduced evidence showing that the defendant had purchased a revolver from a local hardware merchant at noon on the day of the shooting. At the time of his arrest the defendant handed the sheriff his revolver, in which were four loaded cartridges and one empty cartridge.

It appears from the evidence that defendant, beginning in March previous to the homicide, boarded with the deceased, that they quarreled in May, and that defendant then went to board with the Sagers.

The evidence on the part of the defense showed, in substance, that deceased entered the house of his brother-in-law on the evening of the shooting in a partially drunken condition, and immediately began quarreling with his wife, who was lying in bed, sick, and demanded that she go home with him; that he then threatened to kill the defendant before night; that, with a knife in his hand, he ran after the defendant and chased him down an alley; that he returned to the

house, and again quarreled with his wife and Mrs. Sager, and threatened them with his fists; that he again threatened to kill the defendant and anybody else who might interfere with him; that he was ordered by Mrs. Sager to leave the house, whereupon he cursed her and defied her to put him out; that he stepped out on the porch, and while standing there, cursing Mrs. Sager and threatening to strike her with his fists, the defendant came up and shot him. The defendant's witnesses who saw the shooting testified that the defendant shot over the shoulders of Mrs. Sager, who was in front of him at the time, talking to the deceased. The same witnesses also testified that the deceased, at the time he was shot, did not have a knife in his hand, or his hand in his pocket, but had his hands up, making gestures.

Several witnesses for the defendant testified as to threats made by the deceased against the defendant, some of which threats, as defendant proved, had been communicated to him; and there was evidence that there had been a fight between defendant and deceased six or eight weeks prior to the homicide.

Defendant testified in his own behalf that at the time he shot the deceased the latter was threatening to kill him; that deceased had his hand in his hip pocket, and said he came there to kill him, and intended to kill him before dark; that he then fired the fatal shot, his purpose in so doing being to save his life. Defendant also testified that deceased beat him with brickbats about eight weeks before the shooting, and that he had been endeavoring to avoid the deceased while going to and from work.

It was shown that deceased's wife frequently visited her mother and sister, with whom defendant boarded; that defendant and Mrs. Zimmerman were very good friends and were seen together a good deal, and that deceased, while his wife was visiting her mother and sister, would sit on a lumber pile some dis-

tance from Sager's house, and wait there until his wife was ready to go home.

There was considerable testimony to the effect that defendant's reputation for peaceableness was good, and that of the deceased bad.

Defendant contends that the trial court committed error in two respects, namely, in its rulings on the testimony offered both by the State and the defendant, and in refusing certain instructions offered by the defendant.

With regard to the rulings on the evidence, there are several assignments of error based upon the admission of testimony on the part of the State. We have examined them, and in our opinion none of this evidence was incompetent or prejudicial to the defendant.

A more serious question arises with regard to evidence offered by the defendant on one point. It was competent in this case to admit evidence which tended to show the attitude of the parties toward each other, the animus of the deceased, who was the aggressor, and what reasonable grounds, if any, the defendant had for believing that his life was in danger at the time he fired the fatal shot. There was evidence of threats made by the deceased against the defendant, some of which were communicated to him and others not. The following occurred when a witness for the defense, Mrs. Kesterson, was on the stand:

"Q. I will ask you, Mrs. Kesterson, if you remember of Hale and Zimmerman having a fight some time prior to this shooting, say a month or six weeks? A. About six weeks before the shooting came off they had a fight.

"Q. Tell the jury in a general way where that took place and what was done?

"MR. WEST: I object to where it took place and what was done, for the reason it is immaterial. Objec-

tion sustained; to which ruling defendant then and there duly excepted at the time.

"Q. State in a general way what was the character of that difficulty.

"MR. WEST: I object to that question, for the reason it is indefinite and calls for a conclusion; object to it as incompetent and immaterial. It's a difficulty that took place about a month before, as the evidence shows, and has no part in determining the issues in this case. Objection sustained; to which ruling defendant then and there duly excepted at the time.

"MR. LYON: The defendant offers to show by this witness that—

"MR. WEST: We object to the offer being made in the presence of the jury. Objection sustained; to which ruling the defendant then and there duly excepted at the time."

The witness stated that there had been a fight between defendant and deceased about six weeks before the shooting. The ruling of the court that the witness should not be permitted to give the details of the fight is in line with the decisions of this court in the case of State v. Birks, 199 Mo. 1. c. 275, where Judge Fox, speaking for the court, said: "It is insisted by appellant that the court committed error in excluding evidence of former difficulties between the deceased and the defendant. It is only necessary to say upon this proposition, that, so far as regards any details of former difficulties, they were inadmissible. It was competent to show the fact that there had been previous difficulties, and if the defendant made any threats of violence against the deceased, it is competent to prove such threats, but to go into details of former difficulties would simply tend to confuse and mislead the jury, and in many instances direct their attention to the consideration of the question as to who was in the right or wrong in such previous difficulties, concerning which there is no one upon trial."

It will be perceived that the witness was not asked whether any threats were made on the occasion of such fight, and the only matter in dispute is whether or not she should have been permitted to detail the circumstances connected therewith. We think the court was justified in its ruling by the decision of this court in the case above referred to.

The defendant testified that fights had occurred between him and the deceased, and he was permitted to testify that about the middle of May, prior to the date of the homicide, "he beat me up with brickbats, and I was under the doctor's care for four weeks." He was not asked, nor did he undertake to testify, as to any threats on that occasion. In response to a question as to when, if ever, Zimmerman made any threats against him, the defendant testified: "He threatened on Sunday night before this trouble occurred, to kill me, and he told his wife and her mother." It seems clear from the record that the defendant was not undertaking to show any threats connected with or growing out of the former fight, the details of which were ruled out. He was allowed to testify and his witnesses were allowed to testify that there had been a fight between him and the deceased, and, under the authorities, this was as far as he could properly go.

Defendant complains of the refusal of the court to give several instructions offered in his behalf. He offered an instruction on, previous good character, which was not given, but the subject was fully and fairly covered by an instruction given by the court. The next instruction offered by the defendant was as follows:

"The court instructs the jury that Hale had a lawful right to return to his home or place of abode, after having been chased by Zimmerman, because it was his home or abiding place, even though he may have expected to be attacked by deceased."

We think this instruction was properly refused, as no question was made in the case which would justify submitting this matter as a distinct issue to the jury.

Defendant next offered two instructions bearing on the right of self-defense. This subject was fully and properly covered by an instruction given by the court, and these instructions offered by the defendant were properly refused.

He offered one other instruction, as follows:

"The jury is further instructed that any threats made by John Zimmerman against the defendant, if any were made, which were not communicated to the defendant, should be considered by the jury in determining what were the intentions of John Zimmerman at the time Zimmerman went to the home or place where defendant boarded."

The court did not err in refusing to give this instruction, as it was calling attention to particular testimony in the case. The testimony of uncommunicated threats was introduced without objection on the part of the State. Such testimony went to the jury for their consideration, like all other testimony, and there would be no more propriety in calling special attention to this evidence than to any other specific testimony in the case. It is true that in the case of State v. Hicks, 92 Mo. 431, a similar instruction was given in behalf of the defendant. The court in that case, commenting on the instruction as a whole, said that they put the case of the defendant fairly before the jury. As the defendant was appealing, the propriety of an instruction favorable to him was not called in question. It does not follow from what the court said in that case that it would have been held error if the court had refused said instruction. In that case, of course, the defendant was not complaining of instructions favorable to him, and the comment

of the court was necessarily limited to instructions of which the defendant did complain.

There is divided authority outside this jurisdiction upon the question of the admissibility of evidence of uncommunicated threats. In this jurisdiction we hold it admissible upon the question of whether the deceased was the aggressor, and for no other purpose. [State v. Evans, 158 Mo. 589.] This testimony, at best, bears but remotely on the question whether defendant had reasonable grounds to fear for his life, and there is no reason for an instruction on said testimony. The jury were instructed that in passing on the question whether defendant had reasonable grounds to believe that it was necessary to shoot to protect his life, they should consider "all the facts and circumstances in the case." Furthermore, the instruction asked and refused did not properly direct the attention of the jury to the real point upon which the testimony was admitted, but was so worded as to direct their attention to the motive which induced the deceased to go to Sager's house. This was too remote from the real question in issue; that is, was the deceased the aggressor when the shooting occurred.

The instructions given by the court fully covered all phases of the case, and were entirely fair to the defendant.

Finding no error in the record, the judgment is affirmed. *Kennish, P. J.,* and *Brown, J.,* concur.