243 S.W.2d 67 (1951)
STATE
v.
FINN.
No. 42600.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*68 John P. Ryan, Kansas City, for appellant.
J. E. Taylor, Atty. Gen., Lawrence L. Bradley, Asst. Atty. Gen., for respondent.
*69 CONKLING, Presiding Judge.
Charles Henry Finn, Jr., defendant-appellant, has appealed from the judgment of the circuit court of Jackson County, wherein, upon the jury's verdict of guilty of murder in the second degree, he was sentenced to twelve years imprisonment in the state penitentiary for the fatal shooting of Vernon Zimmerman.
After his motion for new trial was overruled, defendant filed here a transcript of the entire record including a bill of exceptions containing all the evidence introduced, but he has filed no brief here. Upon this appeal we examine the record proper and the assignments made in defendant's motion for new trial. RSMo 1949, Sec. 547.270; State v. Weston, Mo.Sup., 202 S.W.2d 50.
As briefly as may be stated, it appears that at one time defendant and Zimmerman worked at the same factory. They had been good friends and rode together to work. Zimmerman moved near to defendant's home and thereafter was often in defendant's home. In June, 1949 Zimmerman was transferred to a night shift. He was attentive to and was often out with defendant's wife while defendant was at work. Naturally, trouble ensued between defendant and Zimmerman, and between defendant and his wife. Zimmerman told Mrs. Finn that he intended to kill the defendant. After a quarrel between defendant and his wife she moved to her mother's home. Thereafter they agreed to a reconciliation. Defendant's wife told defendant that Zimmerman had said he intended to kill defendant. Defendant knew Zimmerman's reputation for being a "pretty rough customer * * * arguing and quarrelsome", and knew Zimmerman carried a knife. Zimmerman told defendant he had a permit to carry a gun and told defendant "about cutting somebody up in Nevada, Mo." On the day before the shooting Zimmerman drove quite slowly by defendant's house a number of times. Defendant started to go out "to see what he wanted", but Mrs. Finn told defendant not to do so, because Zimmerman was going to kill him. Defendant testified he did not want any trouble and "stayed in the house."
On August 25, 1949, while defendant and his wife were eating breakfast there, Zimmerman came to the home of the mother of defendant at 1911 East 80th Street in Kansas City. He parked his car in front of the house. Zimmerman came to the door of the house and there said to defendant that he (Zimmerman) had given defendant's wife $20, and demanded the money and a shirt which Zimmerman claimed to have left there. Defendant asked his wife about the money. A quarrel ensued between Zimmerman and defendant. Defendant, and his wife, testified that Zimmerman there said "he was going to cut my guts out and going to take my wife, too", and that he (Zimmerman) had been intimate with Mrs. Finn for three or four months. Those statements by Zimmerman to defendant were made in the presence of defendant's wife. Defendant and his wife then went to look for Zimmerman's shirt but could not find it. They then went out to Zimmerman's car (in which the latter was then seated) and reported they could not find the shirt. Zimmerman then started swearing, threatened to cut defendant, put his hand in his pocket and started to get out of the car. Defendant then ran into the house and came back to the car with a 12 gauge shotgun.
Rose Bollinger testified that she was only 25 feet away from Zimmerman's car; that she saw Zimmerman seated at the wheel of his car talking with defendant and his wife who were standing by the car; that defendant left the car, ran into the house and returned immediately with a shotgun; that defendant "stuck the gun through the window of the car" and shot Zimmerman as the latter sat at the wheel of the car; that the door came open and Zimmerman fell out and "was laying stretched out" on the ground; and that defendant then "went around to the front of the car and shot him (Zimmerman) again."
Defendant's own testimony as to the shooting (in which he was corroborated by Mrs. Finn) was that when he came out to the car with the gun Zimmerman had hold of the arm of Mrs. Finn who was struggling to free herself; that Zimmerman was then trying to get Mrs. Finn to *70 leave with him in his car but she refused to do so; that when defendant approached Zimmerman jumped out of the car, and said to defendant, "I'm going to kill you right now, you son of a bitch. I'm going to cut your guts out and throw them in the street"; that he (defendant) then fired and Zimmerman stumbled; that Zimmerman then repeated the threat to kill defendant while continuing to come toward defendant; and that defendant again fired and struck Zimmerman. The court instructed on self-defense.
After the shooting the body of deceased lay in the street about four feet from his car. The gun shot wounds had caused his death. A knife and a pair of brass knucks were found in his pockets. Mrs. Finn testified that on August 24, 1949 (the day before the shooting) she told her husband (defendant) that during May, June, July and August, 1949, she had been intimate with Zimmerman.
It is first assigned in the motion for new trial that the information does not state facts sufficient to charge a crime and "is vague, indefinite and uncertain". Examination of the information filed shows that it charges that on August 25, 1949, defendant "feloniously, willfully, premeditatedly, deliberately, on purpose, and of his malice aforethought, did make an assault" upon Vernon Zimmerman with a loaded shotgun inflicting a mortal gunshot wound from which the latter died. The information is in the form we have many times held sufficient. It sets out the method and means by which the death of deceased was effected by defendant and contains all the necessary elements to charge murder in the first degree. RSMo 1949, Sec. 559.010; State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245(6).
Ten different assignments of defendant's motion contend that the evidence in the case "was wholly insufficient to make a submissible case" for the jury. Those assignments will be considered together.
Defendant was charged with murder in the first degree. Under instruction 3 submitting murder in the second degree, the defendant was found guilty. The evidence discloses, and the jury had a right to find, that defendant was jealous and aroused over the relations which he was informed had existed between Zimmerman and Mrs. Finn; that defendant and Zimmerman had a quarrel; that defendant thereupon ran into the house and secured a gun; that he immediately returned and shot Zimmerman while the latter was seated at the wheel of his car; that Zimmerman fell out of the car and defendant again shot Zimmerman while the latter was lying on the ground and thus caused his death. It is clearly established and the jury could find from the evidence that defendant intentionally killed deceased with a deadly weapon. That is sufficient to sustain a conviction of second degree murder. State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100; State v. Hogan, 352 Mo. 379, 177 S.W.2d 465, and cases there cited; State v. Reagan, Mo.Sup., 108 S.W. 2d 391; RSMo 1949, Sec. 559.020.
Defendant's motion assigns as error the admission of Exhibits 2, 3, 5 and 6. Exhibits 2 and 3 are photographs of the scene of the killing taken just after the occurrence. These exhibits clearly were admissible. They tend to establish the conditions which there existed, where the deceased lay in relation to the automobile, the position of the car with relation to the house and the contested issue of fact as to whether Rose Bollinger could see what occurred from the window where she testified she was at the time the shots were fired. Exhibits 5 and 6, pictures of the deceased, show deceased was shot in the back of the head. From these exhibits the jury could infer deceased was not facing or advancing toward defendant when he was shot. They were admissible and clearly tend to disprove that defendant fired in self-defense.
It is likewise assigned that Exhibit 8 was erroneously admitted. This picture of the scene of the killing showing two ejected 12 gauge shotgun shells lying on the ground was clearly admissible. The picture and all shown therein were fully identified. Defendant used a 12 gauge shotgun. The shells were identified as 12 gauge shells and as having been ejected and lying on the ground at the place where they *71 fell from defendant's gun. The admission of the exhibit was not error. State v. Martin, 349 Mo. 639, 162 S.W.2d 847.
Error is assigned in the exclusion of the knife and knucks found in the pockets of the deceased. These exhibits were at first excluded but the court later admitted them in evidence. Upon such action there is nothing to review upon the assignment.
Error is assigned in the admission in evidence of the written statement taken from and signed by defendant after he was arrested, because it appears that (a) defendant was not properly instructed as to his rights, (b) all persons present were officers, (c) defendant's counsel was not admitted to the room, and (d) the statement was not voluntarily made. The testimony in this record does not support the assignment. The statement was properly admitted.
Upon being asked defendant said to the police officers and the assistant prosecuting attorney, who were present when the statement was made, that he desired to make a statement. He was told by the officers that he did not have to make a statement and that it might be used against him. Neither threats, nor inducements nor promises were used or made. Defendant was fully advised of all his constitutional rights. It clearly appears the statement was freely and voluntarily given. We find no testimony whatever to the contrary. That the persons present at the time defendant's statement was given were law enforcement officers, and that his counsel was not admitted to the room during the giving of the statement does not render it involuntary and inadmissible. State v. Pippin, 357 Mo. 456, 209 S.W.2d 132; State v. Bartlett, supra. There is no issue made by the evidence as to the admissibility of the statement and we find no evidence whatever in this record to support the contention in the motion that the court erred in admitting it.
Error is also assigned in permitting cross-examination of defendant's wife beyond the scope of her direct examination with respect to the $20 she testified she borrowed from Zimmerman. Her direct examination discloses that inquiry as to that matter was made upon her direct examination and also as to the date she borrowed the money. Clearly there was no violation of the statute in this regard.
Error is assigned in the refusal to give instructions A, B and D, requested by defendant, because, it is assigned in the motion, the subject matter of those instructions was appropriate, the contents thereof were necessary for the information of the jury in the rendition of a verdict, and the subject matter thereof was not covered by other instructions. We have examined the instructions and find no error in their refusal. But the motion for new trial with respect to said instructions fails to sufficiently "set forth in detail and with particularity * * * the specific grounds or causes therefor," and thus fails to comply with RSMo 1949, Sec. 547.030, State v. Reagan, supra.
Error is assigned for the refusal of the court to give instruction C. That instruction predicated acquittal upon a jury finding that defendant shot to prevent the killing of or great bodily harm to Mrs. Finn or defendant. No testimony in the case warranted an instruction as to any threats against or apprehended danger to defendant's wife as comprehended by RSMo 1949, Sec. 559.040. The instruction was properly refused. This ruling applies equally to instructions E and F.
It is also assigned in the motion that the court erred in giving instructions 2, 3, 4, 5, 6, 8 and 9. Instruction 2 submitted murder in the first degree, but defendant was not found guilty under that instruction. Defendant was found guilty of murder in the second degree as submitted in instruction 3. However, examination of instruction 2 shows it correctly submitted murder in the first degree.
It is complained in the motion that instruction 3 told the jury that if it was found defendant shot "in the lawful defense of his person as more fully described in Instruction number ____", then the jury should acquit. Failure to fill in the number of the self-defense instruction *72 could not possibly have confused the jury. There was only one instruction upon the subject of self-defense. Its number was elsewhere noted in instruction 3. An examination of instruction 4 upon self-defense reveals that instruction is in proper form. As given it has been many times approved. The assignments in the motion for new trial as to instructions 5, 6 and 8 do not comply with the statute and are too vague and indefinite to save anything for review in this court upon appeal.
It is complained that instruction 9, upon reasonable doubt, restricts the jury's consideration of defendant's innocence and unduly limits the doubt which might authorize acquittal. The point attempted to be made is without merit. The instruction in the form here given has been too many times approved by the courts to need citation of authority.
It is next assigned that the court should have instructed on manslaughter. We cannot agree that these facts warrant a manslaughter instruction. At no place in the testimony of any witness do we find facts compelling the court to submit an instruction authorizing a manslaughter verdict. The testimony of defendant and his wife established only that Zimmerman and defendant had an argument; that Zimmerman threatened to cut defendant, put his hand in his pocket and started to get out of the car; that defendant ran into the house and came back with the shotgun; and that Zimmerman, then sitting in the car, repeated the threat to kill defendant, got out of the car and started toward defendant and defendant shot Zimmerman, Clearly these facts compel the submission of self-defense, but they do not compel the submission of manslaughter.
If it were conceded that the acts and conduct of Zimmerman (before defendant went after the gun) were sufficient provocation to arouse defendant's passion, even then Zimmerman made not even an effort to assault defendant or do him harm. Defendant ran into the house where he was at least secure from Zimmerman. He could have stayed there. But without being moved to sudden anger or passion, and without calling the police defendant voluntarily returned to the car with the gun and with an evident purpose to shoot Zimmerman. At most Zimmerman had only made threats and reached into his pocket in a threatening manner. There was no actual personal violence upon defendant by Zimmerman. There is no evidence of any lawful provocation requiring the court to instruct on manslaughter. "`Where there is lawful provocation, the law, out of indulgence to human frailty, will reduce the killing from the crime of murder to manslaughter; but neither words of reproach, how grievous soever, nor indecent provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of personal violence.'" State v. Biswell, 352 Mo. 698, 179 S.W.2d 61, 65, and State v. Bongard, 330 Mo. 805, 51 S.W. 2d 84. Clearly there was nothing in this situation to compel the submission of manslaughter. See also State v. Carroll, 333 Mo. 558, 62 S.W.2d 863, 867 and State v. Allen, 290 Mo. 258, 234 S.W. 837, and State v. Whited, 360 Mo. 956, 231 S.W.2d 618.
Error is also assigned in the motion for new trial that the trial court erred in refusing to give instruction G, requested by defendant, which was as follows: "You are instructed that you will take into consideration the evidence as to threats made by the deceased prior to the killing, if you believe that any of such threats were communicated to Charles Henry Finn, Jr., then such threat or threats may be considered by you as explaining the conduct and apprehensions, if any, of Charles Henry Finn, Jr. at the time of the shooting. You will also consider any threats you may believe were made by the deceased and not communicated to Charles Henry Finn, Jr., for the purpose of explaining the conduct and demeanor of the deceased at the time of the shooting. You may also consider such threats, if any, communicated to Charles Henry Finn, Jr. for the purpose of determining who was the aggressor at the time and the place of the shooting."
*73 The state's brief concedes that the first two sentences of that instruction correctly state the law as declared in State v. Robinett, 312 Mo. 635, 281 S.W. 29, 31, and State v. Cox, Mo.Sup., 263 S.W. 215, and other cases. But the state contends the last sentence of instruction G is erroneous and justified its refusal. It is also contended by the state that instruction 4 given by the court upon self-defense, and telling the jury that whether defendant shot deceased in the honest belief that it was necessary for the protection of defendant's life must be determined "from all the evidence in the case", made the giving of instruction G unnecessary. Some cases seem to so hold. See State v. Creed, 299 Mo. 307, 252 S.W. 678, 681, State v. Hale, 238 Mo. 502, 141 S.W. 1125, and State v. Fletcher, Mo.Sup., 190 S.W. 317. We think instruction G correctly declares the law. Was it necessary to give it?
Much has been written upon the admissibility of both communicated and uncommunicated threats testified to have been made by a deceased prior to the killing. Much more has been written upon the propriety of and necessity for instructions to the jury respecting such threats made by a deceased. See cases cited, Raymond Missouri Instructions, Vol. 2, pp. 638 to 643. In State v. Cole, 304 Mo. 105, 263 S.W. 207, 209 and State v. Shelton, Mo.Sup., 267 S. W. 938, Division Two of this court apparently departed in some respects from the earlier cases of State v. Hudspeth, 159 Mo. 178, 60 S.W. 136, and State v. Darling, 199 Mo. 168, 97 S.W. 592, and seems to have there held that the inclusion of both communicated and uncommunicated threats by deceased was necessary for the information of the jury (in an instruction) in a case of this character.
Where the evidence supports the defense of self-defense, evidence of both communicated and uncommunicated threats made by deceased are admissible in evidence. They are held admissible as explaining the conduct and apprehension of defendant, the conduct and attitude of deceased, and as shedding light on who was the aggressor. State v. Edwards, 203 Mo. 528, 102 S.W. 520; State v. Hale, 238 Mo. 502, 141 S.W. 1125; State v. Williams, Mo. Sup., 274 S.W. 50; State v. Davis, 284 Mo. 695, 705, 225 S.W. 707; 40 C.J.S., Homicide, § 276, page 1233.
In State v. Rozell, Mo.Sup., 279 S.W. 705, loc. cit. 710 (Banc) the trial court had given an instruction as to the consideration the jury should give to both communicated and uncommunicated threats. Upon defendant's contention that the instruction was erroneous, the principal opinion seems to rule that such an instruction was "not required" and "not necessary". But in the Rozell case only six judges participated, Otto, J., not sitting. The principal opinion, written by Judge Walker, was concurred in by Judges White and Atwood. Judges Blair and Graves dissented. Judge Ragland concurred only in the result. Inasmuch as the ruling of the principal opinion in the Rozell case that an instruction such as that now under consideration was not required and "not necessary" to be given at all had the concurrence of only three judges of this court, another judge concurring only in the result, two judges dissenting and one judge not participating at all, it is binding only as to the result reached therein. Moore v. Brown, 350 Mo. 256, 165 S.W.2d 657; State v. White, Mo. Sup., 126 S.W.2d 234.
Where, as here, it was justified by the evidence, it was the duty of the court to instruct on self-defense. RSMo1949, Secs. 546.070 and 559.040; State v. Havens, Mo.Sup., 177 S.W.2d 625. The court did instruct on self-defense (Instruction 4) with an instruction in the form generally given and approved. Defendant requested an additional instruction upon the threat phase of self-defense and asked the court to give instruction G, which the court refused.
In this case an issue was made by the evidence as to who was the aggressor. That issue was for the jury to determine under the testimony of Rose Bollinger, the defendant and defendant's wife. In State v. Fletcher, supra, we held that where the evidence justified and the court gave a self-defense instruction, defendant could not complain of the failure of the court to *74 instruct on threats where defendant had failed to request such threat instruction. See also State v. Sudduth, 331 Mo. 728, 55 S.W.2d 962, 964 and State v. Fultz, Mo. Sup., 142 S.W.2d 39, 44. But here defendant did request such a threat instruction, and the court refused to give it.
In State v. Parker, 358 Mo. 262, 214 S. W.2d 25, 27, where the defense was self-defense, and where defendant knew the reputation of deceased as a violent and turbulent man, the defendant requested and the court refused to give an instruction that defendant's knowledge of the reputation of deceased in such respect was "a circumstance for the consideration of the jury in considering the reasonable cause for defendant's apprehension of great personal injury to himself." We there held that the refusal of such instruction was reversible error. We see no distinction on principle between the Parker case and the instant case.
It is our view of the instant contention that inasmuch as the trial court was under the duty under this evidence to instruct on self-defense that instruction G should have been given. It cannot be rationally contended that instruction 4 was sufficient (and that it was not error to refuse instruction G) where, as here, the evidence presented an actual issue as to whether defendant had reasonable cause to apprehend injury to himself or had reasonable cause to honestly believe himself to be in danger, and also an actual issue under the testimony as to who, in fact, was the actual aggressor at the time of the shooting. The refusal to give instruction G left the jury without any light whatever upon very important features of the defense of self-defense. Those features of that defense are not to be thus minimized because defendant was entitled to have the jury specifically consider them. Those features are the very heart of self-defense. We think it is the sounder rule that where, as here, threats made by deceased were communicated to defendant and a threat instruction was requested, that a proper threat instruction should be given because such threats are entitled to be considered by the jury as bearing on conduct, apprehension and attitude and as shedding light upon who was in fact the aggressor. Cases such as State v. Creed, supra, and others, holding that it is sufficient if a general self-defense instruction merely authorizes the jury to consider all the facts and circumstances, or "all the evidence in the case" should in that respect be no longer followed. Even if the subject matter of instruction G had been but collateral to the main issue, State v. Brown, Mo.Sup., 62 S. W.2d 426, 427, State v. London, Mo.Sup., 295 S.W. 547, loc. cit. 549, and State v. Lackey, 230 Mo. 707, loc. cit. 720, 132 S.W. 602, inasmuch as defendant requested instruction G it should have been given. The refusal to give requested instruction G was reversible error.
It is also assigned as error that defendant requested and the court refused to give instruction J as follows: "If the jury believes from the evidence that the deceased was of rash, turbulent and violent disposition and that the defendant had knowledge of such disposition, then it is a circumstance for the consideration of the jury in considering the reasonable cause for defendant's apprehension of great personal injury to himself." Under the evidence here and under the authority of State v. Parker, 358 Mo. 262, 214 S.W.2d 25, the refusal to give instruction J was reversible error.
We have examined the record proper. The verdict of the jury was as follows: "We, the jury, find the defendant, Charles Henry Finn, Jr., guilty of murder in the Second Degree, and assess his punishment at twelve years in the State Penitentiary".
The omission of the word "imprisonment" from the verdict is not fatal to its validity. State v. Jones, 106 Mo. 302, 17 S.W. 366. No defect appears in the record proper.
For the errors above noted the judgment is reversed and the cause is remanded. It is so ordered.
All concur.