STATE of Missouri, Respondent,

v.

Elsie Mae LASPY, Appellant.

No. 45511.

Supreme Court of Missouri,
Division No. 2.
Feb. 11, 1957.

Rufus Burrus, Independence, for appellant.

**358**

John M. Dalton, Atty. Gen., Winston Cook, Sp. Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

About six fifteen o'clock of the morning of January 1, 1955, defendant Elsie Mae Laspy shot and killed her husband, Julius Laspy. She has appealed from a judgment imposing a sentence of imprisonment for twenty years for murder in the second degree. Defendant contended that she killed Laspy in self-defense.

The shooting climaxed an all-night party in the Laspy home which was attended by numerous people. There was drinking and dancing, and until the incidents that led up to the shooting everyone was having a "good time." At midnight Laspy and two other men went to the front of the house and fired two shotguns in celebration of the new year. Defendant saw her husband take the shotguns to the bedroom of the house and there reload them, but where he then put them is not disclosed by the evidence. By five thirty or six o'clock in the morning, in the language of the witnesses, Laspy "wasn't just drunk, just staggering, but he was pretty well high" and was "almost over the hill." According to defendant, she had had two beers and a whiskey highball. It was about this time that Laspy went to the bathroom where the defendant was, and for some reason not explained, cursed her and kicked her in the stomach. He left the bathroom but returned immediately with a pistol, and after waving it in her face, threatened to kill her. During this time the guests were still "living it up" and none of them heard what was said by Laspy in the bathroom. When Laspy left the bathroom he went to the bedroom, and there was evidence that he was changing clothes preparing to go to work. Defendant testified that he called to her, and that in response to his call she went to the bedroom and sat on the bed. Laspy cursed defendant and again threatened to kill her. He was standing near the door to a closet in the bedroom, and when he repeated the threat to kill defendant and then turned and reached into the closet, defendant picked up a pistol which was lying on the bed and shot him at least three times in rapid succession. He died almost instantly. Shortly after her arrest defendant gave a statement to the police in which she admitted shooting Laspy, and the facts related therein did not in any way indicate that she fired the shots in self-defense. However, she testified at the trial that Laspy had threatened to kill her and she was afraid of him, and that although he did not have a gun in his hands, he had had a gun only a few minutes before when in the bathroom and she knew he always carried a gun, and that when he threatened to kill her and then turned toward the closet, "I thought he was reaching for a gun to kill me with." There was no evidence where the loaded shotguns were, but the police found a loaded pistol in the "left front pocket" of Laspy's trousers.

Two of the guests who were in the living room saw defendant fire some or all of the three or four shots fired by her, but from their location they could not see Laspy. Because of the music from the record player and the other noise of the party they could not hear anything that was said in the bedroom. Apparently one of the male guests was asleep on the bed in the bedroom, but he did not testify, and he and the other guests ran from the house when the shooting started.

Three bullets struck Laspy, but two made only minor wounds. The third struck Laspy in the "back of the head just left of the occipital bone" and it was this wound that caused his death. Over the objection of defendant, the deputy coroner stated that "I think the gunshot in the head was the first bullet, that is my opinion." There is no explanation of how the coroner arrived at this conclusion.

A previous trial of defendant resulted in a verdict of guilty, but a new trial was

granted, apparently because the defense counsel died within a day or two following the verdict. In the present trial state's witness Sullivan testified on direct examination that immediately after the shooting he felt of Laspy's pulse to see if he were alive and that Laspy had a flashlight in his hand, and "as near as I can remember it seemed like that flashlight was lit. It seemed like it was shining up in his face. I am not going to say positive. It seemed like the flashlight was lit as near as I can remember." Whether the flashlight was turned on or off was material because the state contended that Laspy was shot from behind while he was using the flashlight to look for something in the closet and this was inconsistent with the facts contended by defendant in support of her claim of self-defense. On cross-examination defense counsel sought to impeach this testimony of witness Sullivan by showing that in the previous trial he had testified that the flashlight was turned off. The prosecuting attorney objected, and following a proper offer of proof, the trial court refused to permit defense counsel to ask the witness if he had given certain answers at the previous hearing and to show the previous testimony of witness Sullivan, and in doing so stated that "I do not think the testimony of the other trial should be here." Defense counsel later sought to impeach another witness for the state by showing prior inconsistent statements by the witness at the previous trial. It is difficult to tell exactly what defense counsel proposed to show in this second situation. Although he stated he would make an offer of proof he apparently overlooked doing so. However, in the discussion that followed the previous ruling on the use of the transcript of the testimony at the previous trial was discussed, and this incident is related here for the bearing it has on the previous ruling. The trial court stated that defense counsel would be permitted to use the transcript at the preliminary hearing to impeach a witness because of prior inconsistent statement but not the transcript of the testimony at the first trial. The prosecuting attorney stated that he objected to the use of the transcript at the first trial for the purpose intended "unless you [defense counsel] stipulate she was convicted in that case." The ruling of the trial court was that the "objection to this will be sustained." The question of proper proof of the contents of the transcript was not involved.

 Cross-examination of a witness within the permitted limitations is a matter of right, and one of its permissible purposes is to bring out facts that may tend to show that the testimony of the witness on direct examination is untrue or is not entitled to belief. One method of doing this is to show on cross-examination that the witness has made prior inconsistent statements concerning a material matter. State v. Thompson, Mo. Sup., 280 S.W.2d 838, 840. "A witness may be impeached by proof of a contrary deposition taken prior to the trial, and by proof of prior contradictory statements made before a grand jury, at a preliminary hearing, at a coroner's inquest, or on a former trial or hearing of the same case." 3 Wharton, Criminal Evidence, § 923, 12th ed. See also 58 Am.Jur., Witnesses, § 774, and a collection of cases in 11 A.L.R.2d at pages 89–101 and 155–165 in an annotation entitled "Mode of Proving Former Testimony" where in some of the cases impeachment in the manner here attempted was permitted. In State v. Myers, 354 Mo. 277, 189 S.W.2d 279, it was held that the state could impeach the testimony of a defendant at a second trial by use of his testimony at the first trial, and we can conceive no reason why the rule should be different for the defendant who desires to impeach the testimony of a witness for the state. See also State v. Eddings, 71 Mo. 545; State v. Jefferson, 77 Mo. 136; State v. Rose, 92 Mo. 201, 4 S.W. 733; State v. Richards, 334 Mo. 485,

**360**

67 S.W.2d 58. Of course when using the testimony in a previous trial for this purpose, there is no reason to disclose to the jury the result of the previous trial, and it should not be done.

The state has presented no defense of the above ruling of the trial court except to contend that the allegedly inconsistent testimony given at the first trial was not material, and that defendant's "point" in her brief is not sufficient to preserve anything for review. It is conceded that the wording of the point in the brief is not an example to be recommended for future use, but the state admits that the contention of defendant is clearly set out in the motion for new trial and there properly preserved for review, and we do not have to go beyond defendant's brief or search the record to determine the nature of or the exact basis for this complaint. It was prejudicial to the defendant to deny her the right to use the transcript of the testimony at the first trial to impeach the testimony of a witness for the state in the present trial, and the condition imposed upon the right to do so, if the condition was in fact imposed, was unjustified.

Defendant also contends the trial court erred in refusing to permit her to present evidence of prior threats and acts of violence by the deceased toward her, and in its brief the state admits that "the trial court and the prosecutor were under a misapprehension of the law" with regard to the admissibility of the offered evidence. However, the state contends that in this case the defendant was not entitled to present evidence of prior threats and acts of violence by the deceased toward the defendant because there was no competent proof giving rise to the issue of self-defense, and in support thereof cites State v. Whitchurch, 339 Mo. 116, 96 S.W.2d 30; and State v. Woods, 274 Mo. 610, 204 S.W. 21.

If there were any competent substantial evidence of self-defense, it was the trial court's duty to instruct on this issue as a part of the law of the case. State v. Ford, 344 Mo. 1219, 130 S.W.2d 635; State v. Wright, 352 Mo. 66, 175 S.W.2d 866, 870. The defendant admitted that she shot her husband, although she denies that she intended to kill him. She does not urge that the shooting was accidental nor does she urge any other defense inconsistent with that of self-defense. In view of the testimony that Laspy had threatened to kill defendant, that she knew he regularly carried a gun and was of a quarrelsome nature and only a few minutes before had a pistol and had threatened to kill her, that defendant some time earlier had seen Laspy reload the shotguns in the bedroom, and the statement of the defendant that she was afraid of Laspy and that when he threatened to kill her and then turned and reached toward the closet she thought he was reaching for a gun to carry out his threat, the issue of self-defense was a question for the jury. See State v. Turner, 246 Mo. 598, 152 S.W. 313. The trial court was apparently of the same opinion because it did instruct the jury on self-defense as a part of the law of the case. Even though the trial court refused to permit any testimony on behalf of defendant of previous threats and acts of violence by Laspy against her, it also instructed the jury that "you will take into consideration any evidence as to threats or acts of hostility by the said Julius Laspy against the defendant prior to the shooting," and in this instruction it was further stated that if the jury found that such threats or acts of hostility were made they could be considered as explaining the conduct and apprehensions, if any, of the defendant and the conduct and demeanor of Laspy at the time of the shooting, and that such threats could be considered in determining who was the aggressor.

In State v. Hale, 238 Mo. 502, 141 S.W. 1125, 1127, a second degree murder case,

the defendant relied on self-defense, and a defense witness testified that there had been a previous fight between the defendant and the deceased, but the trial court refused to permit the witness to testify as to the details of that fight. The court quoted with approval from State v. Birks, 199 Mo. 263, 97 S.W. 578, 582, as follows:

" 'It is insisted by appellant that the court committed error in excluding evidence of former difficulties between the deceased and the defendant. It is only necessary to say upon this proposition that, so far as regards any details of former difficulties, they were inadmissible. It was competent to show the fact that there had been previous difficulties, and, if the defendant made any threats of violence against the deceased, it is competent to prove such threats; but to go into details of former difficulties would simply tend to confuse and mislead the jury, and in many instances direct their attention to the consideration of the question as to who was in the right or wrong in such previous difficulties, concerning which there is no one upon trial.' "

See also State v. Shoemaker, Mo.Sup., 183 S.W. 322; and State v. Bowenkamp, Mo. Sup., 39 S.W.2d 753. The state contends that defendant's offers of proof included the details of the previous acts of Laspy, and in some respects they did, but the defendant also offered to prove previous threats, and the ruling of the trial court was that it would not permit any testimony concerning former threats or former acts of violence with or without evidence of the details. This was prejudicial error, and on retrial counsel of the prosecution and for the defense should study carefully the rulings of the above cited cases.

Defendant also contends that it was error for the trial court to admit in evidence four pictures showing the body of deceased slumped down in a sitting position in the doorway of the closet. The photographs tended to show the location of Laspy when he was shot and they had a bearing on the issue of self-defense, and they were proper for this purpose. State v. McDaniel, 336 Mo. 656, 80 S.W.2d 185; 2 Wharton, Criminal Evidence, 12th ed., § 687. While the admission of photographs of this nature is to a substantial degree a matter of discretion, we see no reason why the trial court should permit the introduction of four pictures of the same scene with no difference between them except the angle from which they were taken. Defendant also contends that it was error for the trial court to permit the introduction of three pictures of substantial portions of Laspy's body in the nude. The purpose was to show the location of the three bullet wounds, which was of course material to the theory of the state's case. In State v. McDaniel, supra, it was stated that when there is a dispute about material facts upon which the exhibit would throw light, such evidence is competent even though it may tend to agitate the feelings of the jurors. See also State v. Shawley, 334 Mo. 352, 67 S.W.2d 74. Althougth the defendant admitted the shooting and that at least two bullets took effect, one of which caused death, there were other matters material to the state's theory of the case of which the pictures constituted evidence.

Other matters assigned as error, some of which are not entirely without merit, are of the type that probably would not recur on a new trial and need not be discussed here. Because of the prejudicial error previously noted, the judgment is reversed and the cause is remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.