**STATE of Missouri, Respondent,**

v.

**William COLE, Appellant.**

**No. 49974.**

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

 

Morris A. Shenker, Lawrence J. Lee, Emanuel Shapiro, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Robert D. Kingsland, Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Judge.

By an indictment filed in the Circuit Court of St. Louis County, the defendant was charged with manslaughter in the death of one John Henry Rogers on June 23, 1961. Defendant was convicted of said offense and his punishment was assessed at one year's imprisonment in the county jail. He has appealed from the judgment entered against him.

On this appeal there is no contention that a case was not made for the jury, but error is assigned on the giving and refusal of instructions, to wit: on the failure to give instructions with reference to threats made by the deceased against the defendant and with reference to the intoxication of the deceased. Also, on the court's failure to instruct on the question of whether defendant was acting to prevent the commission of a felony upon his companions. Defendant also complains of the giving of Instructions No. 1 and No. 2 because of the exclusion of the last mentioned matter from these instructions.

■■ With these assignments in mind, we shall review the evidence and in doing so we shall consider the evidence in a light most favorable to the defendant-appellant in order to determine whether the evidence was sufficient to support and authorize instructions on the mentioned matters. State v. Stone, 354 Mo. 41, 188 S.W.2d 20, 22 [7]; Thurman v. St. Louis Public Service Co., Mo.Sup., 308 S.W.2d 680, 684 [2]; Rudin v. Moss, Mo.Sup., 349 S.W.2d 893, 894 [1]. That is, we must ascertain whether the record contains any competent substantial evidence on the mentioned matters and whether the court was requested to instruct thereon and whether the issues have been preserved for

review. See State v. Murphy, 292 Mo. 275, 237 S.W. 529, 535 [14] [15] [16]; State v. Clinton, 278 Mo. 344, 213 S.W. 841, 843 [7, 8]; State v. Baker, 262 Mo. 689, 172 S.W. 350, 353 [2, 3]. Instructions must be based upon substantial evidence and the reasonable inferences to be drawn therefrom. State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100, 103 [4, 5].

The State produced and offered in evidence three statements taken from defendant while he was in the custody of the police officers, to-wit: a statement of defendant in his own handwriting reviewing the facts and circumstances attending the death of Rogers; a statement of defendant taken by the coroner of St. Louis County and reduced to writing; and the transcript of a statement given by defendant to Daniel V. O'Brien, a member of the prosecuting attorney's staff, which statement was taken on a tape recorder and then transcribed. Needless to say, these statements contained many admissions against interest, but in view of the issues presented on this appeal it will not be necessary to review either of these statements.

At the time of the alleged crime, the defendant was 20 years of age and weighed 175 pounds. He had graduated from high school and had attended Northeast Missouri State Teachers College at Kirksville for one year and Harris Teachers College in St. Louis for one semester, but he had dropped out of college in January 1961, to work for one semester, planning to return to college in September 1961. Back in 1956, when he was 15 years of age, he had been a Golden Gloves Champion. He had never been in any trouble "with the law." He lived with his parents in the City of St. Louis, and was employed at the Hi-Pointe Professional Pharmacy at the corner of Clayton and McCausland.

Willie Brown, a friend of defendant Cole, also lived in the City of St. Louis, and had also attended Northeast Missouri State Teachers College. Brown had been secretly married to Loresta Smith, who lived with her mother at 217 Euclid in Rock Hill, St. Louis County. She was attending the Kansas Neurological Institute.

One Janet Terry, a friend of Loresta Smith, lived down the street a short distance from the Smith home. John Henry Rogers, age 22 years, lived in the neighborhood of the Smith home and had been at the Smith home on countless occasions. On the evening of June 22, 1961, Janet Terry, who had dated Rogers, was visiting at the Smith home and had refused to see Rogers that evening. Janet Terry had with her as her guest one Johnnie Avery (a girl) from Chicago. Both girls spent the evening of June 22, 1961, visiting Loresta Smith.

The evidence tends to show that for some time there had existed some feeling by the local boys in the county against city boys who came out to visit girls in the county, and there was constant friction and tension between them. The evidence further shows that William Charles Hudson, who was with Rogers on the evening in question, was a known troublemaker.

Defendant Cole spent the evening of June 22, 1961, with Willie Clifton Brown and another friend, Stanley McKissic. McKissic also lived in the City of St. Louis, and was employed as a messenger boy for the Spielberg Manufacturing Company. He had also been a Golden Gloves Champion. At about midnight, Cole and McKissic went with Brown to visit Brown's wife in Rock Hill at the Smith home. They did not drink any alcohol that night, nor did they carry any weapons with them.

At the Smith home they ate brownies, drank milk and played records for an hour or so. Also present was Ted Smith, a young brother of Brown's wife, and Mrs. Smith. One Herschell Turner, a nephew of Mrs. Smith, was also staying at the Smith home during vacation from Washburn College, Topeka, Kansas. He was working as a bus boy at Gaslight Square in St. Louis and, when he got off from work, all of the young people, except Brown and

wife, drove into the city to pick him up and bring him home with them.

While defendant and the others had gone for Turner, Rogers and Hudson raced their automobile back and forth in front of the Smith home, drove into the driveway and out and made a lot of noise and talked loud. When Willie Brown went out to see them, they said they did not want anyone in the house, but as he re-entered the house, they yelled at him to give his name. Thereafter, Rogers and Hudson continued to drive into the driveway, back out and go back and forth in front of the Smith home, making a lot of noise. When the young folks returned with Turner, Brown told the defendant and the others about these fellows pulling into the driveway, cursing and making noise. Mrs. Smith then asked defendant Cole and his friend McKissic to take the visiting girls, Janet Terry and Johnnie Avery, to the Terry home about a block away and they proceeded to do so.

As the boys were returning to the Smith home, walking in the edge of the street, Rogers and his companion Hudson approached them, driving their automobile at a high rate of speed, but Cole and McKissic were able to get on the sidewalk and out of the way, and they continued walking toward the Smith home. Rogers and Hudson then stopped their car and after a few remarks, they got out of the car and "asked what the so and so are we doing out there" and stopped them. Both Rogers and Hudson then started harassing Cole. Cole did not know either of the two men and the place where he had been stopped was very dark. Rogers and Hudson then began hitting, pushing, cursing and threatening Cole. Rogers and Hudson were both drunk and they concentrated their attention on Cole. In an effort to protect Cole, McKissic cut Rogers off from Cole and argued with him, because both men were after Cole. Cole and McKissic explained that they did not want to fight, but Rogers and Hudson persisted with threats, curses, pushing and blows. Hudson then obtained

from his car trunk an automobile hood ornament with which he struck defendant Cole on the back and shoulder. As stated, the area was very dark and it was difficult for Cole to tell who was hitting whom, especially since Cole did not know either Rogers or Hudson.

Brown and Turner, at the Smith residence, heard the affray and ran to the scene. Turner announced that he was going to call the police and ran back to the Smith house. There he told Mrs. Smith to call the police, which she did. Neither Brown nor Turner had participated in the affray. Hudson, upon hearing Turner announce that he would call the police, cursed him and jumped into his car, called for Rogers to join him, but Rogers did not respond. Hudson then drove away.

At the Smith house, Turner obtained a knife from his own suitcase and returned to the scene of the affray, handing it to defendant Cole, so that Cole could defend himself. Cole had been backing up and had started to run. He had gone perhaps 15 feet when he met Turner and received the knife. He then rejoined the group arguing with Rogers. When Rogers saw Cole standing behind Brown, "he ran down toward Cole and they collided." Rogers was stabbed in the chest and fell back on the concrete and Cole fell in the street. Rogers did not get up and, when they saw blood on his shirt, the boys panicked and fled. Later, they called Mrs. Smith to learn that the police had arrived, pursuant to Mrs. Smith's call, and that an ambulance had arrived and removed Rogers. Rogers was pronounced dead upon arrival at the hospital.

Dr. John Poyner Wyatt, M.D., a pathologist and a witness for the State, performed a post-mortem examination on the body of John Henry Rogers. The knife wound had severed the aorta and the pulmonary arteries and passed through "the base of the heart." The witness had had the blood from Rogers' body analyzed for alcohol content and found ".20 grams of al-

cohol percent," or ".05 grams percent" above what the "National Security Council regulations" have fixed as a maximum above which an individual is not capable of operating a motor vehicle.

Appellant's first assignment, as stated, is that "the trial court committed reversible error in failing to give and read to the jury defendant's Instructions Delta 'E' and 'F' or other correct instruction requiring the jury to take into account threats made by the deceased, whether communicated or uncommunicated to defendant in connection with the defense of self-defense."

The trial court refused to give either of these tendered instructions with reference to threats. Instruction No. Delta E follows quite closely the instruction approved in the case of State v. Lloyd, Mo. Sup., 263 S.W. 212, 215 [9], and set out in that opinion. We, therefore, find it unnecessary to set out Instruction No. Delta E in full in this opinion since a substantially similar instruction was fully approved in the Lloyd case, supra. With reference to Instruction Delta E, the record shows: "the defendant requests that the court give an instruction, if not the defendant's offered instruction on threats, then instructions prepared by the court on threats communicated to William Cole by the deceased; and also the defendant requests that the court give an instruction on threats communicated to William Cole by the deceased and/or by Willie Hudson acting in concert or together with the deceased."

The court refused to give either of the instructions and stated that the instruction was refused "for the reason that in the court's opinion this matter [threats] is amply covered by the instruction that is going to be read to the jury relating to self-defense."

In the motion for a new trial, the defendant complained of the refusal of his Instruction Delta E, as follows: "The Court erred in failing to give to the jury instruction Delta E offered by the defendant for the reason that said instruction is a true declaration of the law and the failure to give this instruction denied the defendant the right of having the jury consider the evidence as to threats made by the deceased or another acting together with or in concert with the deceased as bearing on conduct, apprehension and attitude and as shedding light upon who was in fact the aggressor."

Respondent, however, contends that "these instructions were properly refused as there was no evidence of self-defense in this case and, therefore, any evidence of threats was not properly admissible." Respondent relies upon the pre-trial statements of the defendant which defendant sought to explain and to some extent repudiated at the trial. Respondent, in effect, concedes that there was some evidence to support the requested instructions, when respondent states that "Appellant is apparently relying upon the testimony of appellant's friends, McKissic and Brown, who testified for the State. They both testified that just before the stabbing they saw the deceased rush toward appellant and at the same time take a shiny object out of his pocket."

Defendant did testify in his own behalf at the trial, as follows: "I heard somebody say they were going to call the police * * * and then this guy kept—he was all the time, he was directing his attention on me, and * * * I was still backing up from him, I was scared, I was scared out of my head, I didn't know what was happening, I didn't know if he was going to kill me or not. They said they were going to bust my head, that they were going to hurt me, and so I didn't know, I was just scared." Respondent also insists that his reference was to Hudson; however, all the evidence shows that, when the police were mentioned, Hudson got in his car and, after calling to Rogers to come on, he left before Rogers was stabbed.

Defendant further testified at the trial that both Rogers and Hudson "broke at me and began pushing me and hitting me with his fists, * * * I was telling him I didn't want any trouble, I didn't come out there to fight, * * * I broke away from this other one that was holding me, * * * and I was backing up from him trying to get away, because I told him I didn't want to fight, and I knew right then they had been drinking because I could smell it when they came up on me, and I was scared * * *. * * * They said they were going to bust my head, that they were going to hurt me, and so I didn't know, I was just scared." Of Hudson he said, he told me "he was going to kill me with this thing he had in his hand. * * * I was scared for all of us. * * *." He claimed to have no memory of the stabbing.

As to matters immediately preceding the stabbing, State's witness Stanley McKissic testified: "I had trouble with Rogers keeping him away from Cole, that's why I intercept Rogers from Cole, because both of them was harassing Cole. * * * They was telling Cole, at the time they were cursing him, telling him about I'm going to kill this so and so and so. * * * He [Rogers] had his hands in his pockets all the time, he could have had anything, knife, gun, anything * * * plus he was threatening. * * * He was threatening, you know, Cole; he wanted to get Cole * * *. * * * When he [Rogers] seen Cole standing up behind Willie Brown after he had been chased away, he [Rogers] went past Willie Brown to get to Cole. And at that point his hands came out of his pocket with something flashing. * * * That's when he ran to Cole and they collided, * * * and Rogers fell up, back on the concrete and Cole fell down in the street." This witness also said: "He was lunging after Cole. * * * The way Rogers looked up and seen Cole, I don't know, a rage came over him or something, I don't know what happened to him, he flew towards Cole. As a matter of fact, he brushed past Willie Brown and ran into Cole, that's when they

collided." As stated, after they collided, both fell back but Rogers did not get up after that—he had been stabbed. McKissic further said that Rogers repeatedly swung at Cole.

A sergeant of the Rock Hill Police Department testified for the State that Cole told him that when these two fellows got out of the car they acted like they were crazy.

Brown testified that Rogers said, with reference to Cole, that "he was going to kill him, cut his throat, and bust his head."

■ Respondent insists that there was evidence in the record which tended "to contradict the testimony of witnesses Brown and McKissic that deceased was running toward appellant at the time he was stabbed." We fully agree, but defendant was entitled to have the instruction on the evidence favorable to him. The evidence supports the defense of self-defense and on the basis of the favorable evidence in the record, the defendant was entitled to have the jury instructed with reference to threats as set out in Instruction No. Delta E, and the court erred in not instructing the jury on the issue as to threats, as requested. State v. Finn, Mo.Sup., 243 S.W.2d 67, 73 [14–16]; State v. Bounds, Mo.Sup., 305 S.W.2d 487, 491; State v. Trainer, 336 Mo. 620, 80 S.W.2d 131, 134 [5, 6]; State v. Lloyd, Mo.Sup., 263 S.W. 212, 215 [9]; State v. Rozell, Mo.Sup., 279 S.W. 705, 710 [8] [9]; State v. Murphy, supra, 237 S.W. 529, 535 [14]; 41 C.J.S. Homicide § 382, p. 185. In view of the conclusions reached as to Instruction Delta E, we need not specifically consider Instruction Delta F.

Appellant further contends that the trial court erred in failing to instruct the jury that they may take into account the intoxication of the deceased in connection with the defense of self-defense and in failing to give defendant's Instruction Delta C which correctly instructed on intoxication. Instruction Delta C was a fairly long in-

struction dealing with the issue of self-defense; however, the closing paragraph of this instruction, upon which the appellant relies, closed with the following words: "You are further instructed that the defendant, in measuring the existing circumstances at the moment, could properly consider the fact that the said John Rogers and Willie Hudson were drinking, along with all the other existing circumstances at that time."

The trial court refused to give Instruction C, and the record shows that the court said the defendant also "objects to the court's failure to give instructions on the intoxication of the deceased, the question of intoxication of the deceased, as far as determining who was the aggressor." The court then stated that he refused "to give an instruction on intoxication for a number of reasons, one of them being that none has been offered by the defendant, and for additional reasons, primarily because it is not necessary under all the facts and circumstances in evidence."

In the motion for a new trial the defendant complained of the refusal of Instruction Delta C as follows: "The Court erred in failing to give to the jury instruction Delta C, offered by the defendant for the reason that said instruction was a true declaration of the law, was part of the law of the case and was supported by evidence in the case." This assignment was insufficient under Supreme Court Rule 27.20, V.A.M.R.

■ Appellant in his brief states that the intoxication of the decedent was a factor that would reasonably cause apprehension to the defendant, and since there was an issue as to who was the aggressor at the time of the stabbing, the drinking of the decedent could shed light on the issue. Appellant further says that the jury was left uninstructed on a very important feature of the defense of self-defense, and that appellant sees no difference between the question of drunkenness here and the

issue of threats in Finn, supra, and Bounds, supra, and, therefore, the court committed reversible error in failing to instruct on the issue since an instruction was tendered. See State v. Chaney, Mo.Sup., 349 S.W.2d 238. It is true that the record shows that both Rogers and Hudson were drunk at the time in question. This evidence was received without any objection, and it was properly admissible since one of defendant's defenses was self-defense. See State v. Creighton, 330 Mo. 1176, 52 S.W. 2d 556, 564 [16]. Also see 40 C.J.S. Homicide § 278 d, p. 1243. However, the evidence was insufficient to require an instruction thereon, since there was no evidence that Rogers was of a turbulent and dangerous disposition when under the influence of liquor or that defendant knew of any such fact. There was no evidence that intoxication of Rogers played any part in the case or that his intoxication increased defendant's apprehension of danger. State v. Jenkins, 327 Mo. 326, 37 S. W.2d 433, 436 [5]; State v. Miles, 253 Mo. 427, 161 S.W. 766, 769 [7]. The court did not err in refusing to give Instruction Delta No. C, since the self-defense portion of the instruction was well covered by other instructions, nor did the court err in failing to instruct on the intoxication of the deceased.

Appellant further assigns error as follows: "The trial court erred in giving and reading to the jury Instruction No. 1, the verdict directing instruction, Instruction No. 2, the self defense instruction and in failing to give defendant's Instruction No. Delta A, for the reason that the Court removed from the jury the question of whether defendant was acting to prevent the commission of a felony upon defendand's companions. Instruction No. 1 authorized acquittal when the killing is justifiable homicide, defined erroneously to mean only 'lawful defense of one's person'; Instruction No. 2 defined self-defense in terms only of defense of oneself, while Defendant's Instruction Delta A which was refused, would have properly instructed that

justifiable homicide includes prevention of the commission of a felony."

Instruction A was as follows: "The Court instructs the jury that if they find and believe from the evidence that the defendant stabbed and wounded John Rogers for the purpose of preventing the commission of a felony upon the person of Stanley McKissic, or Hershel Turner or William Clifford Brown, they will return a verdict of not guilty."

We find no substantial evidence in the record to have supported the giving of Instruction A. The evidence clearly shows that Rogers and Hudson directed their attention to defendant Cole and not to his associates. There was no substantial evidence of any intent of Rogers to commit a felony by an attack upon Brown, McKissic or Turner, and particularly so after Hudson had departed.

Further, while Instructions 1 and 2 were given by the court over the objection of the defendant, the motion for a new trial does not mention the matters presented in this assignment.

In his motion for a new trial the defendant contended that "The Court erred in giving and reading to the jury instruction number one, the verdict directing instruction, for the reason that said instruction does not contain a correct definition of manslaughter in that it fails to mention excusable homicide and consequently lessened the State's burden of proof by not requiring the State to prove that the homicide was not excusable and said instruction also denied the defendant the legal defense of excusable homicide." Defendant also claimed the instruction was erroneous, as follows: "for the reason that said instruction is tantamount to a comment on the evidence in that it first mentions an assault and then unnecessarily mentions and highlights 'cut, stab and wound' and then again mentions and highlights 'assaulting, wounding and stabbing', [and] said instruction by unnecessarily repeating assault, cut, stab and

wounding tends to crystallize these evidentiary facts in the minds of the jurors and by the time the instruction is read in full these facts tend to be conclusive rather than facts to be found by the jurors."

Defendant also complained of Instruction No. 2 as follows: "The Court erred in giving and reading to the jury instruction number two, the self-defense instruction, for the reason that said instruction narrowed the defendant's right of self-defense in that the instruction fails to allow the jury to return a verdict of not guilty if they feel that the defendant was defending himself against a person other than the deceased. The instruction merely tells the jury that the defendant may be acquitted if he was defending himself as to the deceased or the deceased acting with another and fails to instruct that the defendant had a right to defend himself against another acting alone or in concert with the deceased." Defendant also complained of Instruction No. 2 "for the reason that said instruction shifts the burden on the defendant to prove that he had reasonable cause to believe that his actions at the time of the homicide were necessary to protect his life or person."

It will be noted that defendant in his motion for a new trial did not raise any of the matters of which he now complains. He has wholly abandoned his original complaints concerning Instructions 1 and 2 and seeks to present new matters not previously mentioned. In the motion for a new trial he complained of the refusal of Delta A as follows: "The Court erred in failing to give the jury defendant's instruction Delta A for the reason that the defendant was thereby deprived the right of defense of third persons and consequently deprived of a theory of his defense." As stated, there is no evidence in the record that either Hudson or Rogers assaulted or took any particular notice of defendant's associates, except by way of argument. Their entire attention was directed to defendant, and, while it is true that at one place in the record defendant did say that he "was scared for all of us" still there certainly isn't anything

in the record to justify an instruction on that basis, or to support the contention that Instructions 1 or 2 are erroneous in failing to include the mentioned matter.

For the error in refusing to give Instruction Delta E or any other correct instruction requiring the jury to take into consideration threats made by the deceased against the defendant, as hereinbefore stated, the judgment is reversed and the cause remanded.

All concur.