STATE of Missouri,
Plaintiff–Respondent,

v.

Samuel Howard PEELER, Dennis Alan Peeler, Defendants–Appellants.

No. 41182, 41183.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 29, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Robert C. Babione, Public Defender, St. Louis, for defendants–appellants.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff–respondent.

DOWD, Presiding Judge.

Defendants, Dennis Alan Peeler and Samuel Howard Peeler appeal from their conviction of second degree murder, § 559.-020, RSMo 1969, and common assault, § 559.220, RSMo 1969, [now §§ 565.004 & 565.070, RSMo 1978]. Defendants were sentenced to 75 years imprisonment for murder and 30 days for assault.

The events in question took place in the early morning hours of January 8, 1978 at a tavern in the City of St. Louis. Donna Peeler, daughter of defendant Sam and sister of defendant Dennis, became embroiled in argument with another woman at the bar. As the confrontation became more heated the defendants became involved. Sam put a knife to one Ronnie Johnson's throat threatening to kill him and a scuffle ensued. Dennis came to Sam's aid and both defendants kicked Johnson and beat him with pool cues. Johnson made his escape and was later treated at a hospital for multiple lacerations, head wounds and scalp contusions.

After defendants chased Johnson out of the bar they and their sister got into their truck. As Mr. Rogers, who was another patron in the bar, came outside to see what happened to Johnson, the defendants motioned him over to their truck. Rogers came close to the truck where he was apparently stabbed by Dennis. The defendants followed Rogers back into the bar where they stabbed him until he was dead. Rogers was unarmed and did not offer any resistance.

In this appeal, defendants raise three points relied on. First, the defendants initially claim that the sentence of 75 years imprisonment is so disproportionate to the crime as to shock the moral sense of all reasonable men and is, therefore, cruel and unusual.

Second, defendants allege that the court erred in submitting Instruction No. 4, MAI–CR 2.20, in the form given because as it was submitted it referred to a single defendant. Defendants were jointly charged, tried and the verdict director instructions charged joint action and they contend that such an instruction may have misled the jury to believe that only one of the defendants was presumed to be innocent.

Defendants' third claim is that the court erred in refusing to grant a new trial when subsequent evidence adduced at the hearing on the motion for new trial tended to show

that a defense witness had not testified as a result of intimidation.

The jury was unable to agree on the punishment. Therefore, the punishment was assessed by the trial judge. In exercising such duty the trial judge is vested with discretion bound by statutory perimeters, judgment and the good conscience of the judge himself. *State v. Maynard*, 567 S.W.2d 680, 681 (Mo.App.1978). The sentence assessed was within the range prescribed by the statute. § 565.008, RSMo 1978. Punishment which is within the statutory limits is not cruel and unusual unless it is so disproportionate to the gravity of the offense as to shock the moral sense of all reasonable men. *State v. Mitchell*, 563 S.W.2d 18, 26 (Mo. banc 1978); *State v. Agee*, 474 S.W.2d 817, 821–22 (Mo. banc 1971). The circumstances surrounding the demise of the victim in this case are such that no reasonable man's moral sense can be shocked by punishment of 75 years imprisonment. Indeed, the most shocking fact is the sheer brutality of the offense committed. Relief is denied defendants on their first point.

Defendants' second point concerns Instruction No. 4 (MAI–CR 2.20) on the burden of proof and presumption of innocence. The defendants contend that the instruction, which referred to the "defendant" rather than the "defendants" may have misled the jury into believing that only one of the defendants was presumed to be innocent. There were approximately thirty–three instructions submitted to the jury in this case. When read as a whole and construed together the instructions do not tend to be misleading as to either the burden of proof or the presumption of innocence. *See, State v. Rapheld*, 587 S.W.2d 881, 893 (Mo.App.1979). The point is without merit.

We agree with the defendants that the witness, Eugene Marts, a Hillsdale police officer, did not testify as a result of intimidation. Mr. Marts testified at the hearing on the motion for new trial that he was subpoenaed by defendants as a charac-

ter witness. As he waited to testify outside the courtroom Mr. Marts spoke with Mr. Wizeman, an investigator working in the circuit attorney's office.

Half an hour later Mr. Marts' Chief of police appeared at the courthouse. Mr. Marts had not told his Chief that he was going to testify. The Chief appeared to be angry, accused Mr. Marts of being there for the purpose of intimidating witnesses. The Chief then went into the circuit attorney's office. When he met with his Chief Mr. Marts was instructed not to get involved, that his activities were against the code of ethics and that if he persisted it could result in his termination. Mr. Marts then informed the defense attorney on the second day of trial that he could not testify. The defense attorney did not at any time during trial request attachment of the witness but rather raises this complaint for the first time in his motion for new trial.[1]

Somewhat later Mr. Marts was terminated from his job with the Hillsdale police department; grounds therefor being given for smoking marijuana while on duty, appearing on behalf of defendants charged with murder, and failing to remove police markings from his personal vehicle.

Although the evidence of intimidation is clear we do not believe that the failure of Mr. Marts to testify for whatever reason warrants a new trial. Mr. Marts was intimidated by his Chief, but there is no evidence that the prosecutor participated in or even knew of these activities.

The defendants have not, either in their motion for new trial, or in the record on appeal enlightened us as to what Mr. Mart's testimony would have been or in what manner such testimony would have been material to their cause. The cases upon which defendants rely are not dispositive nor even helpful; they are factually too dissimilar from the case at bar.[2]

While we do not mean to condone the Hillsdale Chief of police's technique for preventing his officers from involving themselves in criminal matters not connected

---

1. Section 491.150, RSMo 1969; *State v. Mixen*, 427 S.W.2d 92, 94 (Mo.1968).

2. In *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) wherein the Supreme

with the department we do not believe that his activities resulted in an unfair trial for the defendants. There is no evidence that the state encouraged or condoned the Chief's intimidation of Mr. Marts. Mr. Marts, apparently knew nothing of the offense with which defendants were charged. We cannot see how his testimony could have changed the outcome of this proceeding.

After this case was argued on appeal and submitted to the court, the defendants filed a pro se brief. Despite the fact that the brief was untimely filed and is not in compliance with Rule 84.04 we have reviewed it and find the contentions contained therein to be without merit.

The convictions are affirmed.

REINHARD and CRIST, JJ., concur.

Court reversed the conviction the intimidated witness was defendant's only witness and therefore, his testimony was clearly material to the defendant's case. *Id.* at 98, 93 S.Ct. at 353. In *U. S. v. Morrison*, 535 F.2d 223 (3rd Cir. 1976) the court also reversed for a new trial. In that case the victim of the prosecutor's intimidation was the defendant's principal witness. *Id.* at 225. In the case of *U. S. v. Smith*, 578 F.2d 976 (D.C.Cir.1973) the court reversed convictions for second degree murder and carrying a dangerous weapon because of intimidation by the prosecutor of a witness whose testimony was "vital to the defense". *Id.* at 979. Defendants also cite *State v. Gailes*, 428 S.W.2d 555 (Mo.1968). In that case the defense's principal witness was released from jail and then disappeared thereby depriving the defendant of her testimony. There was no evidence of intimidation of the witness by anyone.