**STATE of Missouri, Respondent,**

v.

**Arthur G. PEOPLES, Appellant.**

**No. WD 31540.**

Missouri Court of Appeals,
Western District.

July 21, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 25, 1981.

Application to Transfer Denied
Oct. 13, 1981.

William E. Shull, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

The defendant Peoples was charged with murder in the second degree, was found by a jury guilty of manslaughter [§ 565.005, RSMo 1978] and was sentenced to a term of imprisonment for four years. There was evidence that Peoples acted in self-defense and that issue was submitted to the jury. The appeal contends error in that submission and also that other decisions of the court prejudiced the trial.

The defendant Peoples was a forklift operator for a pallet company. He was a recent employee and there was dissatisfaction with his work performance. On the day of the event, the defendant was called to the company office to meet with Jones [the victim], his immediate supervisor, plant superintendent McCurter and company president Rozell. The defendant was told that supervisor Jones and superintendent McCurter were not satisfied with his work, and that Peoples could accept a demotion to pallet assembler or quit the work. The defendant Peoples informed president Rozell that he would return to pick up his check, and left the office. The victim Jones left the office soon after. This sequence of events, then unfolded: the victim Jones encountered the defendant Peoples still on the company premises, they exchanged words, Jones struck Peoples down to the ground with a blow of the fist, Peoples got up and the two grappled, Peoples removed a knife from a pocket and stabbed Jones, and Jones then died from the wound.

The details of the sequence, as garnered from the prosecution evidence, were that Rozell and McCurter—still in the office—were drawn to the window by the shout "T" [the sobriquet for victim Theoplis Jones]. McCurter recognized the shout as the voice of defendant Peoples. There they saw Jones and Peoples, close together, in conversation but could not hear what was spoken. There was no appearance of a hostility. An employee then came to report trouble on the dock. McCurter testified that when he arrived there, Peoples was on the ground and Jones was upright, the two men about a foot-and-a-half apart. Another witness on the scene, Klug, intersticed the events from the report of trouble and arrival of McCurter. As he stood nearby, he saw the defendant Peoples move towards the ramp exit from the dock followed by the victim Jones some six feet behind. The defendant turned to the victim and spoke: "Don't walk behind me, man." Then both men stopped and Jones struck the defendant to the ground with his right hand. The defendant came off the ground and began to grapple with Jones. McCurter came between them, and at that time witness Klug saw a knife in the hand of defendant Peoples. McCurter then pinned Peoples to the ground, knife in hand, and Jones piled on top of them to secure Peoples to the ground. Jones was jostled off the heap, however, and went to fetch a two-by-four board. In the interim, Peoples became extricated and was last seen as he fled the premises. McCurter also saw the knife in the hand of Peoples and saw the defendant draw the weapon out of the body of the victim.

The evidence does not show when Jones was wounded. The knife stab pierced the lower heart so that he bled massively. The medical examiner explained that the victim may have been unaware of the wound during the period of excitement. The victim was taken to the hospital and collapsed en route. His thick clothes were drenched with blood. The victim died at the hospital within hours.

The defendant admitted that he stabbed Jones. He testified that after he met with president Rozell, plant superintendent McCurter and supervisor Jones that morning, he left that office with intention to get into his car and leave the premises. Jones followed and said: "get out of here and don't come back." Jones repeated the instruction. Jones was close behind and Peoples told him not to follow. Jones struck Peoples down and took a step towards Peoples with a hand in the pocket. Peoples feared that Jones had a weapon and so pulled out a pocket-knife, held it up and "somehow Jones jumped into the knife." Peoples recalled that McCurter pulled him to the ground and that Jones piled upon them both.

The court submitted self-defense by Instruction No. 7 on the model of MAI-CR2d 2.41.1. Conformably to the model, Paragraph 3 of Instruction No. 7 submitted:

In determining whether or not the defendant acted in lawful self-defense you should consider all of the evidence in the case.

That paragraph of the MAI-CR2d self-defense form, however, prescribes other components for further direction to the jury as the evidence may show. Among them, are

If [name of victim] *prior to the encounter* made threats which were known by or communicated to the defendant, you may consider such threats as explaining the conduct or apprehensions of the defendant *at the time of the encounter* and for the further purpose of determining who was the aggressor.

And,

If [name of victim] *prior to the encounter* assaulted or directed any specific acts of violence against the defendant, you may consider them as explaining the conduct or apprehension of the defendant *at the time of the encounter* and for the further purpose of determining who was the aggressor. [emphasis added]

These components are for submission when the evidence supports such a direction. MAI-CR2d 2.41.1, Notes on Use 6.

The defendant Peoples requested those component instructions, formulated them in the terms of the models, and tendered them as Paragraph 3 of Instruction A but was refused. He contends that the exclusion of these components from Instruction No. 7 was error.

The prosecution contends there was no evidence, from any source, that the deceased Jones threatened or committed violence upon the defendant Peoples *prior to the encounter* and therefore those components of the model instruction were not submissible. That contention assumes that *the encounter* within the sense of the in-

struction can mean only acts other than that which provoked Peoples to self-defense—in this case [so the argument conceives], the battery to the face.[1] Thus [the argument continues], only acts of threat and violence by the victim against the defendant *prior* to the blow by Jones upon Peoples was submissible under the components, a proof the evidence lacked altogether. The prosecution does not contest that there were words directed by Jones to Peoples *before* the blow or that Jones reached into the pocket *after* the blow. The prosecution merely objects, without other rationale, that a single evidence [the blow to the face] may not prove that the victim was the aggressor and at the same time prove the apprehension of danger to the person to justify the act of self-defense. That, however, is the precise effect the law and the rules of instruction ascribe to such evidence.[2]

The developed law of self-defense requires the especial attention of the jury to evidence of prior threats, reputation of the turbulent disposition of the victim, and described acts of violence by the victim upon the defendant as those incidents may bear to prove the basic elements of the defense. *State v. Hemphill*, 504 S.W.2d 62, 63[1] (Mo.1974); *State v. Ruffin*, 535 S.W.2d 135, 138[6] (Mo.App.1976). A mere direction to the jury to consider such proofs does not suffice. That is because those aspects of evidence are "the very heart of self-defense" [*State v. Finn*, 243 S.W.2d 67, 74[16] (Mo.1951)] they tend to explain the conduct of the defendant "*at the time* of the act of [defense]." *State v. Forsythe*, 251 S.W.2d 17, 19[4] (Mo.1952). In a word:

1. The thesis of the prosecution that the blow by Jones was the proximate inducement to resort by Peoples to defense by deadly force simply does not reflect the evidence. Peoples testified that *after* the blow upon him and while he was still on the ground, Jones approached him—hand in pocket—and it was that apparent menace of a weapon which provoked Peoples to reach for his knife in defense. That inadvertent misdescription of the evidence, albeit innocent, demonstrates how artificial and improbable is a rule which requires the court to determine as a matter of law the precise act which constitutes the inducement to self-defense [the

"encounter"] and then limits the special attention of the jury to only those threats and acts of violence by the victim which preceded that "encounter."

2. The evidence of threats or acts of violence directed by the victim against the defendant submitted under the two components of Paragraph 4 of self-defense MAI-CR 2d 2.41.1 [Paragraph 3 of Instruction No. 3], by the express terms of the model instruction, bear on the jury determinations of who was the aggressor and the apprehension to justify resort to defense.

such evidence, contrary to contention, serves the duplicate role as proof of the fact of aggressor and as proof of the fact of the reasonableness of the apprehension *at the time* of resort to physical force for defense. *State v. Laspy* 298 S.W.2d 357, 361[5, 6] (Mo.1957); *State v. Bundy*, 44 S.W.2d 121, 123[4] (Mo.1931); MAI-CR2d 2.41.1. That evidence, so salient to the defense, becomes part of the law of the case and is given to the jury as a component to the basic self-defense instruction. *State v. Carter*, 585 S.W.2d 215, 219[6] (Mo.App.1979); *State v. Laspy*, 298 S.W.2d 357, 360[5, 6] (Mo.1957). Thus, these incidents of prior threat of violence are submitted to explain the conduct of the defendant *at the time* of resort to defense, and not at the time of a determined provocation by the victim. They encompass for purpose of instruction any threat or violence by the victim upon the defendant *prior to the act of defense*, whether contemporaneous with that conduct or less proximate to that event. *State v. Hemphill*, 504 S.W.2d 62, 63 (Mo.1974); *State v. Bounds*, 305 S.W.2d 487, 490[5] (Mo.1957); *State v. Cole*, 377 S.W.2d 306, 311[3] (Mo.1964).

■ These principles of substantive law and jury instruction were transposed, in those very terms, into MAI-CR 2.40, the immediate precursor of MAI-CR2d 2.41.1. Thus, paragraph 4 of MAI-CR 2.40 [as does paragraph 4 of MAI-CR2d 2.41.1] submits:

In determining whether or not the defendant acted in lawful self-defense you should consider all of the evidence in the case.

Then, that paragraph of MAI-CR 2.40 prescribes four model components for special direction to the jury as the evidence may show, among them, the components to submit prior threats and described acts of violence by the victim against the defendant. The four components were transposed from paragraph 4 of MAI-CR 2.40 into paragraph 4 of MAI-CR2d 2.41.1. The two components of our concern—those which submit

prior threats and acts of violence—are rescripted exactly from MAI-CR 2.40 into MAI-CR2d 2.41.1 except that *prior to the killing* [as was in MAI-CR 2.40] becomes *prior to the encounter* [in MAI-CR2d 2.41.-1].[3] The reason for that altered expression becomes evident at once: MAI-CR 2.40 was formulated for *self-defense in homicides*. [See MAI-CR 2.40, Notes on Use 1]. MAI-CR2d 2.41.1 was formulated for *self-defense by nondeadly force as well as* when the defense results *in homicide*. [See, MAI-CR2d 2.41.1, Notes on Use 4]. Thus, the *encounter* describes the act of defense—whether by deadly or nondeadly force—and not the act of aggression or provocation by the victim. The term *encounter* in the threats and violence components of paragraph 4 of MAI-CR2d 2.41.1, therefore, alters no dimension of these substantive submissions under paragraph 4 of MAI-CR 2.40. The evidence relevant to those component submissions remains, as before, threats and acts of violence by the victim upon the defendant antecedent to the act of defense.

■ The substantive law formulated first in MAI-CR 2.40 and now in MAI-CR2d 2.41.1 constitute evidence of self-defense an element of the law of the case. *State v. Boyd*, 498 S.W.2d 532, 534[2, 3] (Mo.1973). As such, where the evidence shows self-defense, the issue must be submitted to the jury by instruction whether requested or not. *State v. Carter*, 585 S.W.2d 215, 219[6] (Mo.App.1979); Rule 28.02(a). Where the evidence of self-defense shows antecedent threat or violence by the victim upon the defendant, the court must instruct the jury how to consider that evidence as those acts may bear on self-defense—whether requested or not. *State v. Finn*, 243 S.W.2d 67, 74[16] (Mo.1951); *State v. Cole*, 377 S.W.2d 306, 311[3] (Mo.1964); MAI-CR 2.04 [Notes on Use 3]; MAI-CR2d 2.41.1 [Notes on Use 6]; Committee Comments on MAI-CR Instructions, Self-Defense pp. 40, 45–6, 72–3. There was evidence of threat [the gesture

---

**3.** *MAI-CR 2.40, paragraph 4, Component 1:*
(If [name of victim] prior to the killing made threats, etc.)

*MAI-CR 2d 2.41.1, paragraph 4, Component 1:*
(If [name of victim] prior to the encounter made threats, etc.)

by Jones into the pocket while Peoples was still on the ground] and of an act of violence by the victim upon the face of the defendant prior to the act of self-defense by Peoples. These incidents of evidence were requested for submission by tendered Instruction A. They were elements of the law of the case and the neglect to submit the evidence was error, even absent request. Rule 28.02(a); MAI-CR2d 2.41.1, paragraph 4, Components 1 and 4. Moreover, the error was prejudicial, as the precedents judicially determine. *State v. Finn*, 243 S.W.2d 67, 73[16] (Mo.1951); *State v. Bounds*, 305 S.W.2d 487, 491[6] (Mo.1957); *State v. Phillips*, 583 S.W.2d 526, 531[5] (Mo. banc 1979). Rule 28.02(e).

The judgment is reversed and remanded.

All concur.