**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Daniel R. RILEY, Defendant-Appellant.**

**No. 50802.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1986.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Sept. 10, 1986.

Application to Transfer Denied
Oct. 14, 1986.

Susan Lynn Hogan, Public Defender, Columbia, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Defendant, Daniel R. Riley, appeals from a jury conviction of the unlawful use of a weapon, in violation of § 571.030, RSMo Cum.Supp.1984. The Circuit Court of Cape Girardeau County sentenced Riley to three years imprisonment. Defendant raises two points on appeal. First, it is alleged the trial court erred in refusing to give a jury instruction on the defense of third parties which specified prior conduct, demeanor and attitude of one or more persons prior to the encounter which could have prompted defendant's conduct. Second, defendant contends the trial court erred in overruling his challenge to strike for cause a venireperson married to a former assistant prosecuting attorney. We affirm.

Jim Harrison's wife owned the Country Club Bar in Cape Girardeau. Jim was the bartender. On Tuesday nights, the bar conducted pool tournaments for women only. The tournaments generally began around 8:00 p.m. and lasted for a couple of hours. The entrants paid two dollars into a common fund and played for prize money. First, second and third place trophies were awarded monthly.

On Tuesday, March 26, 1985, Daniel and Diane Riley arrived at the Country Club Bar shortly before the pool tournament began. Diane entered the tournament. While the tournament was in progress, the defendant heckled and made rude remarks to Diane's opponents. Harrison asked the defendant to cease the heckling, to no avail.

At approximately 10:30 p.m. a fight broke out between Diane Riley and Jody Ervin. Harrison and Mike Holzum, a bar patron, stopped the fight and separated the women. The defendant was heard saying, "nobody's gonna pick on my lady," as he left the bar. He returned to the bar with a buck-type knife. The blade on the knife was approximately five inches long and slightly over one inch wide at the widest part. Holzum stepped in front of the defendant as Harrison grabbed the defendant from behind and knocked him down. Holzum twisted the knife away.

Defendant then pulled a smaller knife out of his pocket and held it against Holzum's abdomen. Defendant demanded that Holzum return the larger knife, whereupon Holzum closed the knife and returned it. Defendant demanded the first place prize money from Harrison. Harrison refused, but did agree to return Diane's entry fee if they would leave. As Harrison was getting the money, a fight broke out again. The defendant was amid the scuffle with the large knife open. Harrison sprayed mace in the defendant's face while Larry Wilson, another bar patron, grabbed the defendant. Holzum again took the knife away from the defendant. The defendant was heard saying to Diane, "come on, baby, lets go get the gun." Diane Riley

and the defendant left the building. Harrison locked the door. Outside, the pair began beating on the door, but were denied admission to the building.

Defendant put Diane in the car to take her to Southeast Missouri Hospital. En route, the car ran up an embankment and flipped over. A Cape Girardeau firefighter, and a Cape Girardeau police officer arrived at the accident scene. They found the car upside down in the middle of the road. Diane Riley was injured and sitting on the side of the road. The defendant was bleeding, his clothes were torn, and he appeared intoxicated. The smaller knife was found near the overturned car. The larger knife was later turned over to the police by Holzum.

Defendant first contends the trial court erred in refusing to give his proffered instruction to the jury. Defendant's instruction included a paragraph regarding threats made against Diane Riley. Defendant further contends that by giving his instruction, the jury could have found that the defendant's conduct was prompted not only by Diane Riley's injuries, but also by the conduct, demeanor and attitude of one or more persons.

Defendant's proffered Instruction A, in pertinent part, read as follows:

3. In determining whether or not the person acted in lawful defense of another you should consider all of the evidence in the case.

If one or more persons made threats against Diane Riley and these threats were known by or communicated to the defendant, you may consider such threats as explaining the conduct of the defendant at the time of the encounter, and for the purpose of explaining the conduct, demeanor and attitude of one or more persons.

The court submitted Instruction No. 7 to the jury instead of Instruction A. Instruction No. 7 omitted the second sentence of paragraph 3 of Instruction A.

Instruction No. 7, as submitted, conformed to the model of MAI–CR2d 2.41.2. Although MAI–CR2d 2.41.2 provides for certain component instructions to the jury, i.e. the language proffered by defendant in Instruction A but omitted by the court in Instruction No. 7, this component is to be submitted to the jury only when the evidence supports giving the instruction. We do not believe defendant's proffered component instruction is supported by the evidence.

In regard to self defense, what one may do for himself, he may do for another. *State v. Grier*, 609 S.W.2d 201[6] (Mo.App. 1980). However, the right to defend oneself or to intervene to defend another does not imply the right to attack. *Id.* at 204[9].

In the present case, a fight broke out between defendant's wife and another female. The fight was stopped by the bartender and another male patron. At this point, defendant went to the parking lot. He was heard saying, "nobody's gonna pick on my lady" as he left the bar. He returned to the bar with the large knife in hand. The defendant's wife was not in need of protection from unlawful force or threat, actual or apparent, when the defendant re-entered the bar with the knife.

The defendant relies on *State v. Peoples*, 621 S.W.2d 324 (Mo.App.1981) regarding instructions to the jury on the issue of self-defense. *Peoples* is easily distinguished on the facts.

In *Peoples*, supra, the defendant was advised that his work performance was unsatisfactory. He was given a choice of accepting a demotion or quitting. The defendant opted for quitting and was departing the workplace. The defendant's immediate supervisor, also the victim, followed the defendant shouting, "get out of here and don't come back." Id. at 326. The victim repeated the instruction, whereupon the defendant told the victim not to follow him. The victim then struck the defendant down, and took a step toward the defendant with a hand in his pocket. The defendant feared the victim had a weapon and pulled out his own pocketknife. The victim jumped into the open knife. *Id.* at 326.

■ In the present case, neither the defendant nor his wife were placed in imminent fear or danger to justify the flourishing of a deadly weapon. The knife was taken away by a bar patron, Holzum. Holzum was merely acting to restore order. He did not attempt to use the knife against the defendant, nor did he make any threatening gestures or remarks. At this point, defendant had the opportunity to leave the ugly scene. Instead, he chose to pull the smaller knife from his pocket and hold it against Holzum's abdomen to get the larger knife back. The knife was returned to the defendant. Subsequently, another fight broke out and again, defendant was involved, large knife in hand. Any one of these acts was sufficient to support the conviction.

The defendant and his wife, at the first and subsequent signs of trouble, could have left the bar. They were aware of the hostile environment created, at least in part, by the defendant's own acts. Instead, they opted to remain in the bar, apparently for the chance of winning a mere $20.00 in the pool tournament.

Where the evidence shows self-defense, the issue must be submitted to the jury by instruction whether requested or not. *State v. Carter*, 585 S.W.2d 215, 219[6] (Mo.App.1979); Rule 28.02(a). We do not believe the evidence in the present case warrants a self-defense instruction beyond that which was given by the trial court in Instruction No. 7.

Additionally, all instructions, taken as a whole, adequately instructed the jury as to the state's burden of proof, elements of § 571.030 RSMo Cum.Supp.1984, definitions of legal terminology, presumptions, and defendant's asserted defenses. Accordingly, no error occurred. *State v. Peeler*, 604 S.W.2d 662, 664 (Mo.App.1980). We rule point one against the defendant.

Defendant next contends the trial court erred in overruling his challenge for cause to venireperson Nancy Gibson because her husband was a former assistant prosecuting attorney. Defendant contends that an independent examination of Mrs. Gibson was necessary to determine whether she could be a fair and impartial juror.

During voir dire, Mrs. Gibson stated her husband was an attorney practicing both criminal and civil law and was previously an assistant prosecutor. She was not questioned further on this matter by either the state or defense. She remained silent when the panel was asked whether anyone felt they could not be fair and impartial to the defendant.

■ The burden is on the defendant to probe into any area on voir dire which is considered to be grounds for disqualification. *State v. Hendrix*, 646 S.W.2d 830, 832[3] (Mo.App.1982). Where a member of the venire gives an equivocal or otherwise uncertain answer concerning his or her ability to hear the evidence and adjudge the cause without bias or prejudice, then the duty of the trial judge to make independent inquiry as to the juror's qualification arises. *Id.* at 832[4]; *State v. Ealy*, 624 S.W.2d 490, 403[10–12] (Mo.App.1981).

■ The defendant did not meet his burden of probing into areas affecting possible disqualification of venireperson Gibson. Mrs. Gibson did not impart any bias which might have affected her impartiality. Accordingly, the trial court acted properly in permitting Mrs. Gibson to remain on the panel.

Defendant also objects to the trial court's determination that Mrs. Gibson was qualified to sit on the jury based on personal knowledge of her husband. Defendant asserts that the court based its decision solely upon its knowledge of Mrs. Gibson's husband, without questioning the venireperson herself regarding her own personal opinions and possible biases. We have examined the record and do not agree with defendant's claims.

■ The comments made by the trial judge [1] were made in response to defense

---

1. MR. ROBBINS; ... I would next strike Juror No. 13, Mrs. Gibson. I think the fact that her husband is a former Assistant P.A. would be grounds for striking that juror.

counsel's contention that the former position held by Mrs. Gibson's husband, assistant prosecuting attorney, might possibly affect her ability to sit as a juror. The judge's comments, in our opinion, were not intended as an endorsement of Mrs. Gibson's qualifications, rather, they were directed to the fact that her husband had performed on both sides of the counsel table and was "neutral in *his* position,...." (Emphasis supplied). We rule this point against the defendant.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.

THE COURT; Of course, you are well aware of the fact that he has been an almost-full-time public defender before we had a public defender.
THE COURT; ... I am going to and do hereby deny the challenge for cause to Juror No. 13, Nancy Gibson. The Court is personally aware of the fact that her husband has probably represented more defendants in court than he has represented the State in prosecuting cases, and I know that and I know that [sic] Mr. Gibson is very neutral in his position, really.