STATE of Missouri,
Plaintiff–Respondent,

v.

Kenneth Paul BROWN,
Defendant–Appellant.

No. 15351.

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 1988.

No appearance for plaintiff-respondent.

Scott A. Albers, Public Defender Office, Jackson, for defendant-appellant.

PREWITT, Presiding Judge.

Following jury trial defendant was found guilty of operating a motor vehicle while intoxicated. He was sentenced to three months in the county jail and assessed a $150 fine. Defendant appeals. His brief contains three points relied on claiming trial error. Although requesting and receiving an extension of time to file a brief, plaintiff has not done so.

In one of the points set forth in defendant's brief he states that there was insufficient evidence to support his conviction because "discovery of defendant alone in a motor vehicle with the motor not running does not constitute evidence of *operating* a motor vehicle much less operation *simultaneously* with intoxication."

In reviewing to determine if a submissible case was made, this court accepts as true all evidence favorable to the state, including all reasonable inferences drawn from that evidence, and disregards evidence and inferences to the contrary. *State v. Molkenbur*, 723 S.W.2d 894, 895 (Mo.App.1987).

Judith Ann Carter resided in a rural area of Cape Girardeau County with her two children. She was awakened at approximately 2:30 a.m. on December 29, 1986, by the sound of an engine running outside her house. She got up, turned on a light at the back of her house, and saw a pickup sitting in her backyard. She immediately phoned her brother, Dennis Nagel, and asked him to come over. He arrived about ten minutes later.

Upon arriving Nagel shined a light on the pickup. He saw one person in the middle of the cab asleep with his head facing the passenger side. Nagel said the defendant was the sole occupant of the truck. The truck had ceased running and the headlights were on but getting dimmer. The sheriff's office was called and they arrived approximately fifteen minutes later.

A deputy sheriff testified that he arrived at the house at approximately 3:43 a.m. He looked in the pickup and then asked defendant, the person inside, to step out of the truck. The deputy said that defendant was sitting behind the steering wheel of the vehicle. When the defendant stepped out of the truck the deputy noticed a strong odor of alcohol, that defendant's eyes were bloodshot, and his speech was slurred. The deputy said there were no intoxicant containers in the pickup.

The deputy administered two "field sobriety" tests which defendant was not able to perform. The deputy then reached into the truck, turned off the ignition, and turned off the lights. He took defendant to the police station in Jackson. After arriving there defendant refused to take a breathalyzer test. The officer stated that it was his opinion that defendant was "substantially intoxicated enough to where his driving ability would have been extremely hazardous".

Defendant called as a witness Robert Myers. Myers stated that he was driving defendant's pickup the evening before and that morning when it went into Mrs. Carter's yard because he was considering purchasing it from defendant. He stated that he had seen defendant at a local truck stop and with defendant's approval, the two of them started driving around in the vehicle. They were previously acquainted. After several hours of driving the vehicle, he had engine trouble and he pulled off the road into a driveway and on into the backyard.

He said that defendant did not do any of the driving but during the time they were driving around defendant "nodded off". Myers said that upon stopping in Mrs. Carter's backyard the lights came on. He said he tapped defendant on the arm and woke him up to tell him that there was somebody at home and defendant told Myers to "get the hell out of here".

Myers said he jumped out of the truck, ran through the woods and onto the highway, and walked on home. He said that at the time he left, the truck engine had run out of gas. He said that defendant did not consume any alcoholic beverages in the four hours that they were together that evening and morning.

The state's case against defendant was based upon circumstantial evidence. Any fact can be established by circumstantial evidence, and, although the circumstances must be such as are inconsistent with defendant's innocence, it is not necessary that they be absolutely conclusive of his guilt, and the evidence need not demonstrate an absolute impossibility of innocence. *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App.1979).

The evidence was sufficient to support the conviction. That the vehicle came to rest in the backyard of someone's house indicates erratic driving. Defendant was the only person in the vehicle a few minutes later. Although it is conceivable that someone else could have been in the vehicle it seems unlikely that they would have left

defendant and the vehicle in the manner it was found.

The pickup had been driven off the highway, probably in an improper manner, defendant was intoxicated and the only person in it a few minutes later. Defendant's intoxication was consistent with erratic driving. No cans or bottles which might have contained intoxicants were found in the vehicle indicating that defendant must have consumed intoxicants before the pickup stopped. Of course, the jury did not have to believe Myers. His testimony was highly suspect.

While the evidence here may not have excluded every possibility of innocence, a jury could find beyond a reasonable doubt that defendant had been operating the vehicle in an intoxicated condition. This point is denied.

■ In another point defendant contends that the trial court erred in overruling his motion in limine to exclude evidence of his refusal to take a breathalyzer test and in permitting such testimony in evidence. Defendant relies upon *City of St. Joseph v. Johnson*, 539 S.W.2d 784, 787 (Mo.App. 1976). It held that the refusal to submit to a breathalyzer test is not admissible in a prosecution for driving while intoxicated. At trial the state relied on *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 714 L.Ed.2d 748 (1983), arguing that because of it *City of St. Joseph v. Johnson*, was no longer valid.

It is not necessary to decide if *Johnson* still has validity.[1] This point was not preserved for review. Not only did defendant not object to the question regarding the refusal to take the test, his counsel said: "I would have no objection to the question, 'Did he refuse a breathalyzer test?'"

■ A motion in limine preserves nothing for appellate review. A party must make an objection when the evidence is introduced at trial. *State v. Simpson*, 718 S.W.2d 143, 147 (Mo.App.1986). This point is denied.

Defendant states in his remaining point that the trial court erred in denying his challenge for cause of venireman Bob Johnson. During voir dire Johnson stated he knew Robert Myers, who later testified for defendant, when Myers was working at a filling station. Johnson said Myers wanted to work for him "on the farm". When asked how he would characterize his knowledge or relationship or acquaintance with Myers, Johnson replied that it was "very dim, I guess." When asked whether he would "lean toward his testimony or away from his testimony because of your knowledge of him?" Johnson said, "I don't know what to say."

Johnson stated that he did not know the defendant but knew "his parents real well". When asked whether knowing defendant's parents would "affect your ability to sit and listen to the evidence?" Johnson replied that he would "rather not sit on the jury." When the panel was asked if anyone had "religious scruples against drinking", Johnson stated that he was "a Christian, and.... against drinking, period."

■ "A defendant has the right to be judged by fair and impartial jurors who will accord each witness's testimony the weight to which it is entitled, and a venireman whose answers indicate that he cannot do this should be discharged for cause." *State v. Ealy*, 624 S.W.2d 490, 493 (Mo. App.1981). To qualify to serve on a jury venire members must be able to enter upon that service with an open mind, free from bias or prejudice. *State v. Hendrix*, 646 S.W.2d 830, 832 (Mo.App.1982). The defendant is entitled to a full panel of qualified venire members before peremptory challenges. *Id.*

■ Since the failure to excuse for cause a legitimately challenged venireman is reversible error which might result in a new trial, doubts should be resolved in favor of exclusion. *State v. Ealy, supra,* 624 S.W.2d at 493. The broad discretion

---

1. At least two other Missouri decisions since *Neville* have also found it unnecessary to decide if *Johnson* should be followed. See *State v.* *Long,* 698 S.W.2d 898, 902 (Mo.App.1985); *State v. Davison,* 668 S.W.2d 252, 254 (Mo.App.1984).

granted the trial judge in ruling on challenges for cause is predicated in part upon the requirement that the trial judge carefully consider the responses of the prospective jurors and make an independent evaluation as to their qualification. Id.

When a member of the venire gives an equivocal or otherwise uncertain answer concerning his ability to hear the evidence and adjudge the case without bias or prejudice, then the trial judge has a duty to make an independent inquiry as to the juror's qualification. *State v. Riley,* 716 S.W.2d 416, 419 (Mo.App.1986); *State v. Hendrix, supra,* 646 S.W.2d at 832.

The absence of an independent examination by the trial judge justifies a more searching review by an appellate court of the challenged juror's qualifications. *Ealy,* 624 S.W.2d at 493. Where a prospective juror gives equivocal answers which reveal uncertainty as to his ability to serve, failure of the trial judge to further question the juror to explore possible prejudice may undercut any basis for the trial judge's exercise of discretion and constitute reversible error. *Id.*

Johnson gave answers which indicated he felt that he might not be able to impartially serve. The trial judge made no independent inquiry as to the juror's qualifications, weighing against a decision based on that judge's discretion. The trial judge should have determined if Johnson could have fairly served or should have sustained the challenge for cause. Defendant did not receive a full panel of venire persons who indicated they could enter the jury box disinterested and with an open mind. For this reason the judgment must be reversed.

The judgment is reversed and the cause remanded for a new trial.

HOGAN, FLANIGAN and MAUS, JJ., concur.