Samuel PEELER and Dennis
Peeler, Appellants,

v.

STATE of Missouri, Respondents.

Nos. 53136, 53179.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 10, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 14, 1988.

Application to Transfer Denied
July 26, 1988.

Holly G. Simons, Asst. Public Defender, Dave Hemingway, St. Louis, for appellants.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondents.

PUDLOWSKI, Judge.

Movants appeal the denial of their Rule 27.26 motion after an evidentiary hearing. We reverse the conviction of Samuel Peeler and remand for a new trial.

Movants, Samuel and Dennis Peeler, father and son, were convicted on November 3, 1978 after a joint jury trial in the Circuit Court of the City of St. Louis of second degree murder and common assault. Movants' convictions were affirmed on direct appeal in *State v. Peeler*, 604 S.W.2d 662 (Mo.App.1980) which contains a detailed description of the events leading to conviction.

On August 23, 1984 movants filed a pro se petition for Rule 27.26 relief and counsel was appointed. A joint evidentiary hearing was held on movants' amended Rule 27.26 motions in the Circuit Court of the City of St. Louis. The hearing court issued findings of facts and conclusions of law denying the movants the relief requested.

Several of movants' points on appeal challenge the finding of the hearing court regarding the effectiveness of trial counsel. In order to establish ineffectiveness of counsel, the movants must show that their attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that they were prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Richardson v. State,* 719 S.W.2d 912, 915 (Mo.App.1986). The movant must overcome the strong presumption that his attorney's conduct fell within the wide range of reasonableness and that the actions of the attorney are considered sound trial strategy. *Potter v. State,* 742 S.W.2d 231 (Mo.App.1987).

On appeal our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j). The findings of the court are clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Richardson,* 719 S.W.2d at 915.

█ In their first point on appeal movants argue that the hearing court's conclusion that counsel was not ineffective for failing to request a severance was clearly erroneous. Samuel argues that he did not consent to a joint trial and was entitled to severance as a matter of right. Dennis argues that he was prejudiced by the joint trial in that Samuel's belligerence on the stand and inability to accurately understand and reply to questions tended to incriminate him. The hearing court found that Rule 25.07, in effect at the time of the trial, provided that jointly charged defendants shall be tried jointly or separately in the discretion of the court. Since Judge

Stubbs testified at the evidentiary hearing that he would have denied any motion to sever, the hearing court concluded that counsel was not ineffective in failing to file a motion to sever. This conclusion is based on an erroneous interpretation of the law in effect at the time of trial.

Rule 25.07(a), in effect at the time, provided:

> *[W]hen two or more defendants are jointly charged with the commission of a felony, any one defendant, before announcing himself ready for trial at any term of the court, if he require it, shall be tried separately.* In other cases defendants jointly indicted or informed against shall be tried separately or jointly in the discretion of the court.

Severance, in the case of the Peelers, was not a matter for trial court discretion. Had counsel requested it, severance would have been granted as a matter of right.

The Peelers were together at the time of the murder. Although we do not have the benefit of trial counsel's testimony at the evidentiary hearing, it appears from Dennis' testimony that counsel told him that a jury was unlikely to convict a father and son if tried jointly. The hearing court found that decision to be a matter of trial strategy. We find that the hearing court's judgment on this issue was not clearly erroneous.

█ In movants' second point they argue that the hearing court's conclusion that counsel was not ineffective for failing to request an interpreter for Samuel Peeler was clearly erroneous. Samuel argues that the lack of an interpreter or other means of transcription at trial deprived him of his right to confront witnesses and due process. Dennis argues that the absence of an interpreter hampered his ability to focus his attention solely on the proceedings and to bring out exculpatory evidence to the jury through Samuel, his co-defendant. The state, in response, argues that the testimony of the presiding judge and prosecuting attorneys at the evidentiary hearing indicated that Samuel understood the proceedings and that Dennis' effort to

interpret the proceedings for his father protected Samuel's constitutional rights. The hearing court found that while Samuel was hard of hearing, he nonetheless understood the proceedings. The court concluded that Samuel was able to clearly relate the events of January 8, 1978, the night of the murder, and that any problems Samuel had in understanding the proceedings were cured by Dennis' assistance in transcribing the proceedings. We disagree.

The movants presented the only evidence as to Samuel's auditory capacity at the time of trial. Dr. Margaret Peak, an audioligist at the Veterans Administration Hospital in St. Louis, examined Samuel in 1973. At the time of that examination, Peak concluded that Samuel suffered severe to profound bilateral hearing loss. He was unable to understand spoken English except under ideal conditions, i.e., while facing the speaker directly from a reasonable distance, in a room with very little background noise, and while using a very powerful hearing aid. Further, even under ideal conditions, Peeler would have to rely on nonverbal cues from the speaker such as gesturing, intonation and lip reading. Interferences such as distance, obstruction of his line of vision or the face of the speaker would hamper Peeler's already limited ability to lip read. Unfamiliarity with the speaker as well as emphasized speech would also present problems in comprehension. Peak examined Samuel again in 1986 and found that his hearing had deteriorated. Based on her observations, Peak opined that Samuel was not feigning his hearing impairment.

Susan P. Russell, certified interpreter for the deaf also testified on behalf of the movants. She first contacted Samuel two weeks before the evidentiary hearing while he was in prison. She stated that Samuel had good spoken abilities but was unable to read lips well or understand sign language. Written means of communication were felt to be the most effective. Russell had interpreted courtroom proceedings in the past and was able to point out some of the special needs of the hearing impaired in such a situation. In order for a hearing impaired person, who was able to lip read, to understand courtroom proceedings without the aid of an interpreter, he would have to be able to clearly see the face of the speaker at all times. In addition he must be able to follow and direct his attention to the speaker during rapid exchanges of questions and answers. In typical courtroom settings, Russell felt that it would be difficult, if not impossible, for Samuel to understand the proceedings without an interpreter due to the movement of the actors at trial and the rapid exchange of conversation between them. Samuel was unable to lip read well when Russell examined him and doubted that his ability was any better in 1978.

Trial counsel was aware that Samuel had a hearing problem. No effort was made to secure the services of an interpreter. At trial Dennis sat next to Samuel and attempted to summarize the proceedings for his father by writing notes. Dennis, however, was unable to keep up with the testimony and gave up at some point. Thereafter, he would relate witness testimony to Peeler during the breaks. Samuel Peeler testified that he understood none of voir dire or the witness' testimony and relied on Dennis to keep him abreast of the proceedings

The judge who presided over movants' trial testified at the evidentiary hearing. He was made aware of Samuel's hearing problem but felt there was no need to appoint an interpreter. The judge observed Samuel throughout trial, particularly his testimony while on the stand, and felt that he understood the proceedings. However, this statement is refuted by the record. At sentencing the movants were asked to approach the bench. After sentence was pronounced upon Samuel, the judge turned to Dennis and stated, "Mr. Peeler, *I'm not sure that your father understood everything I told him because of his hearing loss.* I will not necessarily for the record repeat everything that I told him because it applies equally to you." (Emphasis added).

The attorney who represented the state observed Samuel's demeanor and participation at trial and felt that he was able to

understand the proceedings. He felt that Samuel was using his hearing problem as an excuse to avoid answering troublesome questions. The assistant prosecuting attorney, who sat second chair at Peelers' trial was of the opinion that Samuel understood the proceedings. He based his opinion on observations he made of Samuel during trial.

Our research has revealed no Missouri cases that address this issue. However, this situation is not unlike cases that involve a defendant who is unable to speak English. In *Negron v. State of New York*, 434 F.2d 386 (2d Cir.1970) a Spanish speaking defendant was convicted of second degree murder. The only interpreter present at trial was one employed by the prosecutor to translate witness testimony from Spanish to English. The defendant was able to learn of the proceedings only by way of summaries given to him during breaks by the state's interpreter. The court found the conviction violated principals of fundamental fairness as well as Negron's Sixth Amendment guarantee of a right to confront and cross examine adverse witnesses. *Id.* at 389. By subjecting Negron to proceedings that he did not understand, the court in effect denied Negron the right to be present at his own trial. If the right to be present is to have meaning, every criminal defendant must have a reasonable degree of rational understanding and the ability to consult with his lawyer. *Id.; Holmes v. State*, 494 So.2d 230 (Fla. Dist.Ct.App.1986).

*Ferrell v. Estelle*, 568 F.2d 1128 (5th Cir.1978) involved a deaf defendant who was unable to read lips or use sign language. Counsel requested, and the court denied, stenographic translation. The court recognized that the constitution requires a defendant to understand the proceedings against him and be able to assist in his own defense. While the court found that the refusal to appoint a stenographer was not erroneous due to the likely interruption and delay of the proceedings, the court, as well as defense counsel, erred in failing to pursue alternatives to accommodate the defendant's disability. The convic-

tion was reversed and the cause remanded for a new trial.

The hearing court compares this case to *State v. Gonzalez–Gongora*, 673 S.W.2d 811 (Mo.App.1984). In that case a Spanish-speaking defendant was assisted throughout trial by an acquaintance who translated the proceedings. The court recognized substantial authority holding that the denial of a needed defense interpreter impairs the defendant's due process rights, right to confront adverse witnesses, right to effective assistance of counsel, and right to be present at his own trial. There was no indication that the interpreter was in any way deficient in his role. However, the Southern District went on to point out that the defendant was not complaining that he did not receive the benefit of an interpreter, rather, he argued that the court erred in not going through the formality of appointing the person who assisted the defendant as a defense interpreter. *Id.* at 819. This is not the issue in this case and has no precedential value.

The Court of Appeals of Louisiana, in *State v. Tamez*, 506 So.2d 531 (La.Ct.App. 1987) found that the trial court erred in permitting a co-defendant to translate English into Spanish for his co-defendant at the plea stage. In so holding, the court stated that an interpreter should be a neutral and detached individual whose abilities are first screened by the court and who is sworn to make a true, literal and complete bilateral translation. The use of an unqualified, unsworn interpreter who was the co-defendant with the accused and who also has a substantial interest in the outcome of the proceedings, renders the plea itself questionable.

After a review of the trial transcript it appears that Samuel Peeler was able to adequately understand the questions asked of him on direct and cross-examination. However, this fact alone does not mean that he had a rational understanding of the rest of the proceeding. The testimony given by Dr. Peak at the evidentiary hearing makes it clear that Samuel was probably unable to understand what was being said at trial. The state offered no contrary

evidence, in fact, its own witness acknowledged that Samuel likely did not understand what was being said to him at sentencing. We find that the failure of counsel to request an interpreter constituted ineffective assistance of counsel and resulted in a conviction that is constitutionally infirm and that the finding of the hearing court in this respect was clearly erroneous. We reverse the conviction of Samuel Peeler and remand the cause for a new trial.

■ Dennis argues that the failure of trial counsel to make an effort to appoint an interpreter for Samuel deprived Dennis of a fair trial and his right to confront witnesses. He avers that the action of trial counsel in allowing Dennis to serve as interpreter for the benefit of Samuel was unreasonable in that it diverted his full attention away from the trial and, in effect, deprived him of his right to be present at his own trial.

The accused in a criminal prosecution has the right to be present at his own trial. Mo. Const. Art. 1, Section 18(a). A defendant who voluntarily absents himself from his trial is held to have waived his right to be present. *State v. Cosby*, 719 S.W.2d 478 (Mo.App.1986). At the evidentiary hearing Dennis testified that he voluntarily attempted to transcribe the proceedings for his father; his services were not solicited by the court, his attorney or the state. While Dennis may have felt a moral obligation to apprise his father of the proceedings, he was under no legal obligation to do so. Any right Dennis may have had to be "present" was waived by his voluntary assumption of interpretation duties.

Dennis also argues that the lack of an interpreter interfered with his ability to bring out exculpatory evidence through the testimony of his father. In particular, it is argued that a reasonable probability exists that but for the mistaken answers of Samuel regarding the infliction of facial wounds to the victim, the jury would have reached a different result. This argument is purely speculative. The state introduced photographs of the victim's slashed facial wounds and, although Samuel's and Dennis' testimony conflicted as to whether either of them inflicted the wounds, the jury could have rejected both of their stories because of the photographic evidence. We find no prejudice to Dennis and his point is denied.

■ In Dennis' third point he claims that his trial counsel misled him into rejecting the state's plea offer and that the hearing court erred in not finding such action ineffective assistance of counsel. The hearing court found that this claim was not fully developed at the evidentiary hearing and failed for lack of proof. We agree.

The only testimony in the record which relates to the state's plea offer is as follows:

Q. Did he explain to you the range of punishment for this offense?

A. Yes and no, he explained and *told us what we could get* but he also told me what he thought I would get if I was convicted. (Emphasis added).

Q. Would you speak up, sir, please.

A. He had an opinion about if I was found guilty.

Q. What was that opinion?

A. I believe he said three years.

Q. Three years, did he ever come to you and say there was an offer from the State for a plea of guilty in this case?

A. Yes, he did.

Q. Did he tell you what that offer was?

A. It was fifteen years.

Movant failed to present any evidence at the hearing in support of his contention that a "reasonable probability exists that but for [the attorney's] unreasonable and inaccurate advice, the appellant would have accepted the plea bargain." Movant makes a conclusory statement and offers no facts in support thereof. He was informed, according to his own testimony, of the possible sentence, took a gamble and lost. Point denied.

■ In his fourth point Dennis argues that the trial court erred in submitting MAI–CR 4.50, the "Kerry Brown" instruction to the jury at the close of the evidence and prior to deliberation. He alleges that

the submission of that instruction was premature and encouraged the jury to disregard the question of penalty. Movant's trial counsel objected at the time the instruction was offered but failed to renew his objection in his motion for a new trial. Dennis now argues that if his attorney had preserved the issue for appeal his conviction may have been reversed.

It is unclear whether movant is challenging the effectiveness of his attorney or whether he is arguing pure instructional error. However, assuming arguendo that this type of claim is cognizable in this proceeding, *State v. Brown*, 443 S.W.2d 805 (Mo. banc 1969), established that the giving of such an instruction at the time the judge charges the jury is permissible. Even if counsel had renewed his objection, the issue would have not been successful on appeal. Point denied.

The judgment of the hearing court in regard to Dennis Peeler's Rule 27.26 motion is affirmed. The conviction of Samuel Peeler is reversed and the cause is remanded for a new trial.

STEPHAN, P.J. and DOWD, J., concur.